Matthew Righetti (Cal. State Bar No. 121012)
Righetti • Glugoski, P.C.
2001 Union Street, Suite 400
San Francisco, CA 94123
Tel.: (415) 983-0900
Fax: (415) 397-9005
Email: matt@righettilaw.com

Justin M. Scott (Cal. State Bar No. 302502)
Radford Scott LLP
160 Clairemont Avenue, Suite 610
Decatur, GA 30030
Tel.: (678) 780-4880
Fax: (478) 575-2590
Email: jscott@radfordscott.com

Tracey T. Barbaree (*admitted pro hac vice*)
Beth A. Moeller (*admitted pro hac vice*)
MOELLER BARBAREE LLP
1175 Peachtree Street N.E., Suite 1850
Atlanta, GA 30361
Tel.: (404) 748-9122
Email: tbarbaree@moellerbarbaree.com
Email: bmoeller@moellerbarbaree.com
*Attorneys for Plaintiffs and the
Putative Collective*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWEENA WASHINGTON and DAPHNE MOLEFE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIRCLE MEDICAL TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:23-cv-01420-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>Date: December 7, 2023<br>Time: 9:30 a.m.<br>Courtroom: B; Videoconference only<br>Judge: Hon. Laurel Beeler |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 7, 2023 at 9:30 a.m. PST, or as soon thereafter as the matter may be heard by video conference only, in Courtroom B – 15th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Edweena Washington and Daphne Molefe ("Plaintiffs") will, and hereby do, move this Court for approval of the Collective Action Settlement Agreement (the "Settlement," attached as Exhibit 1 to the Declaration of Justin M. Scott In Support of Plaintiffs' Motion for Approval of FLSA Collective Action Settlement" ("Scott Decl."), entered into with Defendant Circle Medical Technologies, Inc. ("Defendant" or "Circle Medical") (Plaintiffs and Defendant collectively referred to as the "Parties") including certification of this matter as a collective action for settlement purposes, payments to the Participating Collective Members according to the distribution plan set forth therein, assignment of Settlement Administrator duties to CPT Group, Collective Representative Service Payments to the Named Plaintiffs, and attorneys' fees and costs to Collective Counsel.

This motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair and reasonable, provides adequate compensation and notice to the Collective Members, and should be approved for the reasons set forth in the attached memorandum.

This motion is based on this notice, the following memorandum in support of the motion, the Scott Declaration (Ex. A), the Declaration of Tracey T. Barbaree ("Barbaree Declaration") (Ex. B), the Declaration of Matthew Righetti ("Righetti Declaration") (Ex. C) and Exhibits; this Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY ................................................................................ 1

III.  SUMMARY OF SETTLEMENT TERMS ........................................................ 2

      A.    The Settlement's Basic Terms ................................................................. 2

      B.    The Settlement Fund ............................................................................... 2

      C.    Eligible Persons ...................................................................................... 3

      D.    Notice and Check Distribution Process .................................................. 3

      E.    Limited Release of Claims ...................................................................... 4

      F.    Settlement Awards .................................................................................. 4

      G.    Settlement Administrator ........................................................................ 5

      H.    Attorneys' Fees and Costs ...................................................................... 6

IV.   ARGUMENT ..................................................................................................... 6

      A.    A One-Step Approval Process Is Standard for FLSA Settlements. ........ 6

      B.    Alternatively, the FLSA Settlement Collective Should be
            Conditionally    Certified for Settlement Purposes. ............................... 7

      C.    The Settlement Should Be Approved ...................................................... 9

            1.    Legal Standard for FLSA Settlement Approval .......................... 9

            2.    Bona Fide Disputes Exist .......................................................... 10

            3.    The Settlement is Reasonable .................................................... 12

            4.    The Requested Attorneys' Fees Are Reasonable. ...................... 16

            5.    The Collective Representative Service Payments Are Fair And
                  Reasonable. ............................................................................... 16

            6.    The Settlement's Proposed Cost Reimbursement Is Reasonable........ 17

V.    CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Adoma v. Univ. of Phoenix*, 913 F. Supp. 2d 964, 981-984 (9th Cir. 2012) ...................... 16

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).......................... 9

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015).................... 13

*Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *2-3 (D. Conn. July 31, 2014)................................................................................................................................ 6

*City of Burlington v. Dague*, 505 U.S. 557, 568 (1992)......................................................... 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ............................. 10

*Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006)...................... 7

*Fossett v. Brady Corp.*, 2021 WL 2273723, at *10 (C.D. Cal. Mar. 23, 2021) ................. 17

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ................................. 6

*Herbin v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 429081, at *1 (W.D. Pa. Jan. 27, 2020).... 6

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001)........................... 7

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ......................................... 7

*Hogan v. Allstate Bev. Co.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011) ...................... 14

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................... 17

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).............. 17

*Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014)............................................................................................................................... 13

*Kempen v. Matheson Tri-Gas, Inc.*, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016)..... 7

*Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1185 (E.D. Cal. 2018) ................... 16

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009)......................................................................................................................... 13

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016)............................................................................................................................... 6

*Kries et al. v. City of San Diego*, 2020 WL 3606613, at *7, quoting *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014) ............................................. 15

*Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 175 (S.D. N.Y. 2015) ...................... 9

*Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) ...................................................................... 9, 10

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) ................................................................................................ 9

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) ............................................ 11

*Mendez v. U.S. Nonwovens Corp.*, 2016 WL 1306551, at *3-*7 (E.D.N.Y. Mar. 31, 2016) ...................................................................................................... 14

*O'Connor v. Oakhurst Dairy*, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ............... 6

*Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014) ................................................................................................. 14

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1164 (C.D. Cal. 2010) ............... 16

*Peake v. City of Coronado*, No. 21 Civ. 00820, 2021 WL 6113340, at *1 (S.D. Cal. Dec. 27, 2021 ................................................................................................... 6

*Powell v. Lakeside Behavioral Healthcare, Inc.*, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011 ................................................................................................... 6

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019) ........................... 17

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ...... passim

*Smothers v. NorthStar Alarm Servs., LLC*, 2019 WL 280294, at *8 (E.D. Cal. Jan. 22, 2019) ..................................................................................................... 9

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322–34 (N.D. Cal. 2013) ............................. 7

*Wegner v. Carahsoft Tech. Corp.*, 2022 WL 316653, at *5 (D. Md. Feb. 1, 2022) ............. 6

## Statutes

29 U.S.C. § 202(a) ...................................................................................................... 1, 9

29 U.S.C. § 216(b) .................................................................................................... passim

29 U.S.C. § 255(a) ..................................................................................................... 1, 11

29 U.S.C. § 201 ............................................................................................................... 1

## Rules

Fed. R. Civ. P. 23 ............................................................................................................ 6

I. **INTRODUCTION**

This Motion is brought by Plaintiffs Edweena Washington and Daphne Molefe ("Plaintiffs"), individually and on behalf of all members of this collective action (collectively the "Collective"). Plaintiffs and Defendant Circle Medical Technologies, Inc. ("Circle Medical" or "Defendant") (collectively the "Parties") have reached a Settlement of this Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA") collective action. As set forth herein, Plaintiffs seek certification of this matter for settlement purposes and approval of the Settlement. Defendant does not oppose this Motion.

The proposed Settlement meets all relevant criteria for settlement approval under Ninth Circuit authority and results in a recovery of between 72-139% of the highest maximum recovery for the collective action claims in this action. Specifically, the Settlement provides substantial monetary relief to the Collective; eliminates the risks inherent in further litigation; was negotiated by experienced attorneys using the necessary frameworks to avoid collusion (or its perception); and does not include a blanket release of all potential related claims against Defendant. For these reasons, Plaintiffs respectfully request that the Court certify this case as a collective action for settlement purposes and grant approval to this proposed FLSA collective action settlement.

II. **PROCEDURAL HISTORY**

On March 27, 2023, Plaintiffs filed the Collective Action Complaint seeking unpaid wages under the FLSA, on behalf of themselves and all others similarly situated. *See* Compl., Doc. 1. Plaintiffs allege that Defendant violated the FLSA by misclassifying them as independent contractors. *See* Compl., Doc. 1. Plaintiffs sought collective certification of similarly situated persons who worked for Defendant in administrative customer support, prescription, billing, and patient advocate/care/coordinator roles (including, but not limited to PCC I, PCC II, Patient Care Advocate, Patient Care Coordinator, RX Patient Care Advocate/Coordinator, Pharmacy Support Specialist, and Billing Support Advocate/Coordinator positions) ("Contractors"). Plaintiffs allege that Defendant failed to pay Plaintiffs and others similarly situated as employees for all hours worked and for overtime at the time and one-half rate for hours worked over forty (40) in each

workweek. Defendant paid Plaintiffs and other similarly situated Contractors on an hourly basis and at the same hourly rate for all recorded hours worked. Plaintiffs also alleged that Contractors spent time working off-the-clock for which they were not compensated.

On May 19, 2023, Defendant filed an answer to the Complaint, denying that it misclassified persons as independent contractors. *See* Answer, Doc. 15, at ¶¶ 2, 21, 30. Defendant admitted that it paid persons working as independent contractors on an hourly basis at the same hourly rate for all recorded hours worked. *See id.* at ¶¶ 4, 14, 17, 19.

Thereafter, the Parties agreed to confer regarding a possible resolution and engage in an informal exchange of information to further settlement discussions. The Parties filed a stipulation with the Court seeking a stay of all deadlines pending mediation of the matter. *See* Docs. 23, 24.

On September 26, 2023, the Parties attended a full-day mediation session presided over by Professor Lynn Cohn. Scott Decl., ¶¶ 26, 33. The Parties reached agreement on the Settlement at the mediation.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    The Settlement's Basic Terms

The Parties have executed a Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of Justin M. Scott in Support of Plaintiffs' Motion, the material terms of which are summarized herein. The Settlement Agreement provides that Defendant will make a Gross Settlement Amount payment of $360,000.00 plus the Defendant's share of required taxes on the supplemental wage portion of settlement payments to settle the Collective claims, to cover the costs of administration, to provide Collective Representative Service Payments to Plaintiffs, and to compensate Collective Counsel for the time and costs incurred. *See* Settlement Agreement ¶ 1.20. The Parties have agreed to the appointment of CPT Group as the Settlement Administrator to distribute notice, payments, and tax documents, and report to the Parties. *Id.* at ¶¶ 1.2, 8.

### B.    The Settlement Fund

The Settlement Agreement establishes a gross settlement amount of $360,000.00, plus

Defendant's share of required taxes on the wage portion of payments made to Participating Collective Members, to settle claims against Defendant (the "Gross Settlement Amount"). Scott Decl., at Ex. 1 (Settlement Agreement) at ¶ 1.20. The Gross Settlement Amount covers all Individual Settlement Awards paid to all Participating Collective Members; all attorneys' fees and costs; and the fees and costs of the Settlement Administrator. In addition to the $360,000.00, Defendant further agrees to pay the required taxes on the supplemental wage portion of settlement payments. *Id.*

### C.    Eligible Persons

The Settlement Agreement defines Collective Members in this Settlement as Plaintiffs and approximately 94 additional persons who worked for Defendant in the United States as independent contractors at some point between March 27, 2020 and approval of the Settlement in positions in administrative customer support, prescription, billing, and patient advocate/care/coordinator roles, using job titles including but not limited to, Patient Care Coordinator I, Patient Care Coordinator II, Patient Care Advocate, Patient Care Coordinator, RX Patient Care Advocate/Coordinator, Pharmacy Support Specialist, and Billing Support Advocate/Coordinator. *See* Scott Decl., at Ex. 1 (Settlement Agreement) at ¶ 1.10.

### D.    Notice and Check Distribution Process

Fourteen (14) days after the Court enters the Approval Order, Defendant will provide a spreadsheet to the Settlement Administrator with the following information for each Collective Member: (i) name; (ii) last known mailing address; (iii) Social Security Number; (iv) start date of work for Defendant; (v) date of termination of work for Defendant; (vi) rate(s) of pay; (vii) email address; and (viii) amount of alleged overtime pay owed for overtime hours worked during the Claim Period. *Id.* at ¶ 1.9.

Within fourteen (14) days after receiving the Collective Data, the Settlement Administrator will send via first-class mail and email the Collective Members the Notice of the Settlement and Claim Form in the form attached as Exhibits A and B to the Settlement Agreement. *Id.* at ¶ 8.4.1. The Collective Members will have sixty (60) days to submit a Claim Form to the Settlement Administrator. *Id.* at ¶ 1.31.

The Settlement Administrator will obtain a correct address for any Eligible Settlement Collective Member for whom a Notice is returned as undeliverable, using Social Security Numbers, and re-mail the Notice to those individuals. *Id.* at ¶ 8.4.2.

No later than ten (10) days after the Response Deadline, the Settlement Administrator shall determine the required taxes on supplemental wage portions of the settlement payments and shall communicate such amount to Defendant with a detailed explanation of the calculations. *Id.* at ¶ 5.2. Within seven (7) days of the Administrator providing the calculation of taxes on the wage portion, Defendant will transmit the Gross Settlement Amount of $360,000, plus Defendant's share of required taxes on the wage portion of payments made to Participating Collective Members, to the Claims Administrator to be held in escrow in a Qualified Settlement Fund. *Id.* at ¶ 5.2. The Settlement Administrator will issue checks to Participating Collective Members within seven (7) days after the funding of the Qualified Settlement Fund. *Id.* at ¶ 5.4.

### E.    Limited Release of Claims

All Participating Collective Members (Collective Members who consent to become a party to this Action by timely returning a Consent Form to the Settlement Administrator) will release:

> any and all wage and hour claims arising during the Claim Period that reasonably could have been alleged against the Released Parties based on the factual assertions contained in the Complaint, including the following: (i) claims for failure to pay regular wages, minimum wages, and overtime wages in violation of the Fair Labor Standards Act; (ii) claims for failure to pay regular wages, minimum wages, and overtime wages in violation of any and all state and/or municipal statutes, regulations or ordinances; (iii) claims for recovery of federal, state and/or local employment taxes, deductions and withholdings paid on earnings from their work for Defendant, including without limitation, federal and/or state self-employment taxes, and Federal Insurance Contributions Act taxes (Social Security and Medicare); and (iv) all available relief based on the foregoing claims, including but not limited to, unpaid wages, liquidated damages, statutory penalties, pre- and post-judgment interest, and attorneys' fees and costs (collective "Released Claims").

Scott Decl., at Ex. 1 (Settlement Agreement) at ¶ 6.1.

### F.    Settlement Awards

The Individual Settlement Awards will be determined for each Collective Member based on

the time and pay records provided by Defendant to determine each Collective Member's pro rata share of the Net Settlement Amount, as defined in Section 1.23 of the Settlement Agreement. No unclaimed funds will revert to Defendant. Each Collective Member will be allocated a pro rata share of the Net Settlement Fund pursuant to an allocation formula based on the number of recorded hours they worked during each workweek during the relevant period and based on their regular pay rate during the relevant weeks. Scott Decl., at Ex. 1 (Settlement Agreement) a ¶ 4.2.4 (specifying the formula). To calculate each Collective Member's share of the Net Settlement Fund, Collective Counsel calculated the actual unpaid overtime hours worked by each Collective Member for each workweek during the relevant time period, then multiplied half the regular rate by the overtime hours worked to determine the alleged overtime wages due, and added the alleged overtime wages due and alleged liquidated damages to establish the potential total owed damages for each Collective Member under the FLSA. *Id*. In addition, to determine potential additional non-FLSA damages, Collective Counsel (i) assessed any state law damages applicable to the factual allegations for each Collective Member; and (ii) calculated for each Collective Member the employer share of taxes had the payments been treated as wages by Defendant. Scott Decl. ¶ 18. For each Collective Member who previously signed a severance agreement with Defendant and received severance pay, that Collective Member's potential claim for unpaid damages related to alleged failure to withhold and state law (non-FLSA) damages was reduced by the severance amount. *Id*. at ¶ 23. Collective Counsel determined each Collective Member's percentage share of the Net Settlement Fund by dividing that individual's potential total owed damages (the numerator) by the sum of the potential total owed damages for all Eligible Settlement Collective Members (the denominator). *Id*. at ¶ 27(f). Each Collective Member will be allocated a settlement amount equal to the individual's percentage share times the Net Settlement Amount. *Id*.

### G.     Settlement Administrator

The Parties have retained CPT Group, an experienced wage and hour claims administrator, to serve as the Settlement Administrator. Scott Decl., at Ex. 1 (Settlement Agreement) ¶ 1.2. CPT Group provided an estimate of $16,032 for its fees to administer this Settlement, reduced to an

agreed-upon flat fee of $11,000.00. Scott Decl. at ¶ 32. The Settlement Administrator's fees will be paid from the Gross Settlement Amount. Scott Decl., at Ex. 1 (Settlement Agreement) ¶ 1.3. These fees and costs will cover preparing and sending the notice, retaining record of all returned consent forms, calculating the employer and employee share of payroll taxes, establishing a QSF, issuing checks and mailing them and/or directly depositing them, and preparing tax returns for the QSF. *Id.* at ¶ 8.6.

### H.    Attorneys' Fees and Costs

Under the Settlement Agreement, subject to Court approval, Collective Counsel will receive one-third of the Gross Settlement Amount as attorneys' fees, totaling $120,000.00, plus out of pocket costs of $1,227.75. Scott Decl., at Ex. 1 (Settlement Agreement) at ¶ 4.2.2.

## IV.    **ARGUMENT**

### A.    A One-Step Approval Process Is Standard for FLSA Settlements.

Collective actions under the FLSA are "fundamentally different" than class actions. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). Throughout the country, courts have found a one-step approval process, rather than the two-step process for settlement approval of class actions, appropriate in FLSA settlements. *See, e.g.*, *Powell v. Lakeside Behavioral Healthcare, Inc.*, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011) (approving one-step settlement approval process for FLSA collective action); *Peake v. City of Coronado*, No. 21 Civ. 00820, 2021 WL 6113340, at *1 (S.D. Cal. Dec. 27, 2021) (same).[1] The due process concerns present in class actions are not present in collective actions brought under the FLSA because there are no absent class members who will be bound to a release of their claims. *See O'Connor v. Oakhurst Dairy*, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."). "FLSA § 216(b) class certification, unlike Rule

---

[1] *See also Wegner v. Carahsoft Tech. Corp.*, 2022 WL 316653, at *5 (D. Md. Feb. 1, 2022) (approving one-step settlement approval process for FLSA collective action); *Herbin v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 429081, at *1 (W.D. Pa. Jan. 27, 2020) (same); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) (same); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *2-3 (D. Conn. July 31, 2014) (same).

23 certification, requires putative class members to affirmatively opt in to the § 216(b) action." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). Furthermore, a fairness hearing is not required. *Moore v. Ackerman Inv. Co.*, 2009 WL 2848858, at *2 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b).").

Consistent with this authority, and to facilitate the Parties' Settlement, Plaintiffs request that the Court allow Notice of the Settlement be sent to the proposed Collective Members, as outlined above. Only Collective Members who timely return their Claim Form will release claims.

## B.    Alternatively, the FLSA Settlement Collective Should be Conditionally Certified for Settlement Purposes.

Under the FLSA, "one or more employees" may file a civil action—termed a "collective action" on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action under Rule 23, to participate in the collective action, an employee is required to give his consent in writing to become a party. 29 U.S.C. § 216(b); *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action, so that the employee can make informed decisions about whether to participate). "If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action." *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006). "When the parties seek settlement approval of an FLSA collective action claim before seeking certification of a collective action, courts in this circuit first consider whether certification is appropriate and then whether the proposed settlement is substantively acceptable." *Kempen v. Matheson Tri-Gas, Inc.*, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322–34 (N.D. Cal. 2013).

The Ninth Circuit's decision in *Campbell v. City of Los Angeles* provides guidance on what "similarly situated" means in the FLSA context. 903 F.3d 1090, 1110–17 (9th Cir. 2018). According

to the Ninth Circuit, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. *Campbell* specified a two-step approach for determining whether a FLSA collective action may proceed. In the first step, the plaintiff moves for preliminary certification and the district court applies a "lenient [standard] ... loosely akin to a plausibility standard," with the analysis "focused on a review of the pleadings but [ ] sometimes [ ] supplemented by declarations or limited other evidence." *Id.* at 1109. If granted, "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.* In the second step, typically following discovery, the employer may move for decertification, showing the "similarly situated" requirement has not been satisfied, prompting the court to "take a more exacting look at the plaintiffs' allegations and the record." *Id.*

Applying the *Campbell* framework, Plaintiffs submit that that preliminary certification of the FLSA collective action is appropriate. Plaintiffs define the Collective here as persons classified as independent contractors in the U.S. for Defendant in administrative customer support, prescription, billing, and patient advocate/care/coordinator roles, utilizing different job titles (including, but not limited to PCC I, PCC II, Patient Care Advocate, Patient Care Coordinator, RX Patient Care Advocate/Coordinator, Pharmacy Support Specialist, and Billing Support Advocate/Coordinator) from March 27, 2020, through final disposition of this case. (Doc. 1, at ¶ 3). Plaintiffs submit that the members of the Collective are similarly situated because they were all employed in similar positions and were subject to Defendant's pattern, practice, and policy of classifying them as independent contractors and failing to pay them overtime compensation for all hours worked over 40 in a workweek. *See* Compl., Doc. 1. At this preliminary stage, Plaintiffs have satisfied that the "putative 'party plaintiffs are alike in ways that matter to the disposition of their FLSA claims,' as they held similar jobs with similar functions and were uniformly subject to [Defendant's] compensation policies that led to the alleged FLSA violations here, presenting 'similar issue[s] of law or fact material to the disposition of their FLSA claims.'" *Smothers v.*

1   *NorthStar Alarm Servs., LLC*, 2019 WL 280294, at *8 (E.D. Cal. Jan. 22, 2019) (quoting *Campbell*,

2   903 F.3d at 1117). For these reasons, this case matter should be conditionally certified for settlement

3   purposes.

4       **C.      The Settlement Should Be Approved**

5           **1.      Legal Standard for FLSA Settlement Approval**

6           The FLSA was enacted to protect covered workers from substandard wages and oppressive

7   working hours. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); 29

8   U.S.C. § 202(a) (characterizing substandard wages as a labor condition that undermines "the

9   maintenance of the minimum standard of living necessary for health, efficiency and general well-

10  being of workers"). "The FLSA places strict limits on an employee's ability to waive claims for

11  unpaid wages or overtime ... for fear that employers may coerce employees into settlement and

12  waiver." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)

13  (hereinafter "*Selk*") (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 175 (S.D. N.Y.

14  2015)) (internal quotation marks and citation omitted). FLSA claims for unpaid wages "may only

15  be waived or otherwise settled if the settlement is supervised by the Secretary of Labor or approved

16  by a district court." *Id.* (citing *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor*,

17  679 F.2d 1350, 1352–53 (11th Cir. 1982)); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL

18  6629608, at *2 (N.D. Cal. Dec. 19, 2012) (same).

19          While the Ninth Circuit has not weighed in as to the criteria district courts should consider

20  in determining whether an FLSA settlement should be approved, recent caselaw in the Circuit has

21  followed the approach of *Selk* in determining whether a settlement is fair and reasonable. In *Selk*,

22  the court looked to the following: "(1) the plaintiff's range of possible recovery; (2) the stage of

23  proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by

24  the parties; (4) the scope of any release provision in the Settlement Agreement; (5) the experience

25  and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or

26  collusion." 159 F. Supp. 3d at 1173. "In considering these factors under a totality of the

27  circumstances approach, a district court must ultimately be satisfied that the settlement's overall

28

effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id*. If after considering these factors the court determines that "the settlement reflects a reasonable compromise over issues that are actually in dispute," then "the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id*. (quoting in part *Lynn's Food Stores*, 679 F.2d at 1354). At the same time, the court should also bear in mind the strong presumption in favor of finding that a settlement is fair. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). As shown below, the *Selk* factors weigh in favor of finding the Settlement to be a "fair and reasonable" resolution of the Parties' bona fide disputes.

The Settlement in this case easily meets the standard for approval. The Settlement has the effect of: (1) providing monetary relief to those Collective Members who opt into the Action by timely consenting to join the case, (2) in exchange for a narrow and limited release of the Participating Collective Members' wage claims only, and (3) eliminating the inherent risks both sides would bear if this litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

## 2. Bona Fide Disputes Exist

Several *bona fide* disputes exist between the Parties: (1) whether Defendant was an "employer" and has any liability; (2) if so, the amount of unpaid wages owed to the collective members, (3) whether Defendant is liable for liquidated damages; and (4) whether the FLSA's two-year or three-year statute of limitations should apply.

### a. Liability

Plaintiffs maintain that they, and others similarly situated, were misclassified as independent contractors by Defendant. Defendant denies these claims and asserts that the Collective was properly classified. This claim is highly factual. Among the factors which a Court considers are: (1) the extent to which the services rendered are an integral part of the principal's business; (2) the permanency of the relationship; (3) the amount of the alleged contractor's investment in facilities and equipment; (4) the nature and degree of control by the principal; (5) the alleged contractor's opportunities for

profit and loss; (6) the amount of initiative, judgment, or foresight in open market competition with others required for the success of the claimed independent contractor, and (7) the degree of independent business organization and operation. While Plaintiffs believe their misclassification claim is meritorious, Defendant would argue that the factors do not support Plaintiffs' claims.

### b.    Wages Owed to Collective

Plaintiffs' recorded hours worked in this case are not in dispute. However, Plaintiffs allege that they worked off the clock during the relevant time period for which they were not compensated. Defendant disputes this claim and asserts that Collective Members were compensated at a straight time rate for all time worked. Plaintiffs maintain that the time they spent logging into Defendant's software systems before clocking in and the time worked during meal breaks for which they were required to clock out likely exceeds one (1) hour each workweek. Plaintiffs further believe that most of this time should be paid at each Contractor's overtime rate. Defendant disputes this claim and asserts that any such off-the-clock time was *de minimis*.

### c.    Liquidated Damages

The third *bona fide* dispute between the Parties concerns the ability of Plaintiffs to recover liquidated damages. Liquidated damages in an amount equivalent to back wages are available under the FLSA unless the employer proves that its conduct was reasonable and in good faith. *See* 29 U.S.C. § 216(b). While Plaintiffs believe they would be entitled to liquidated damages, Defendant contends that liquidated damages are not warranted as it had a good faith defense that it properly classified the Contractors and was unaware of any off-the-clock time worked. Defendant's contentions would raise a *bona fide* issue on the matter of liquidated damages.

### d.    Statute of Limitations

The usual FLSA statute of limitations is two years; however, if a plaintiff can prove that the employer's violation is "willful," a three-year statute applies. *See* 29 U.S.C. § 255(a). To establish willfulness, a plaintiff must prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Plaintiffs' claim to the three-year statute of limitations involves the same

sort of *bona fide* disputes that would be raised in the context of liquidated damages, with the not insignificant difference that where the burden of proof on a liquidated damages defense would rest with Defendant, Plaintiffs would bear the burden of proving willfulness for the extended limitations period.

### 3.    The Settlement is Reasonable

Given the presence of the *bona fide* disputes between the Parties, the applicable fairness factors in *Selk* should be applied by the Court.

### a.    Plaintiffs' range of possible recovery

The first of the *Selk* criteria asks whether the Settlement amount bears "some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174. That inquiry is aided in this case by the Parties' examination of Defendant's payroll data and modeling of potential damages. If Plaintiffs prevailed on liability, Defendant's liability would depend upon whether Defendant was liable for liquidated damages and whether a two- or three-year statute of limitations applied. Scott Decl., ¶ 14. Based on Collective Counsel's calculations, Plaintiffs' best possible recovery of the alleged unpaid overtime in the three-year maximum limitations period is approximately $128,864.85, with an equal amount for liquidated damages, for a total of $257,729.70. *Id.*, ¶ 15, 23. If the off-the-clock claim is included in the calculations, Plaintiffs estimate that the best possible recovery, assuming one hour per week at an overtime rate of pay, is an additional $120,328.93, with an equal amount for liquidated damages, for a total of $240,657.86. *Id.* For the overtime and off-the-clock claims combined, the total maximum possible recovery is $498,387.56. *Id.* ¶ 23. The off-the-clock claim in particular is vigorously disputed by Defendant and would be more difficult to prove on a collective basis. *Id.* It is also uncertain whether liquidated damages would be warranted for that claim. *Id.* If the off-the-clock claim is excluded, the total settlement amount of $360,000.00 represents more than **139%** of the best possible recovery for Plaintiffs. *Id.* If the off-the-clock claim is included, the Settlement represents approximately **72%** of the best possible recovery. *Id.* This amount is significantly higher than the range of reasonableness approved for wage and hour settlements. *See Selk*, 159 F.Supp.3d at 1175 (approves settlement

representing 26-50% of maximum recovery); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class"). This factor supports settlement approval.

### b.    Stage of proceedings

A district court should also assess the stage of proceedings and the amount of discovery completed to ensure that the Parties have an adequate appreciation of the merits of the case before reaching a settlement. *Selk*, 159 F. Supp. 3d at 1177. This criterion is difficult to apply in this case as, due to significant cooperation between the Parties, the Parties did not engage in formal discovery. Here, however, Defendant provided Plaintiffs with the relevant time and payroll data for all collective members during the period covered by this lawsuit. Scott Decl., ¶ 16. The payroll data contained information for each person's daily hours worked, including overtime hours worked for which Plaintiffs were seeking compensation in this proceeding, and all forms of compensation. *Id*. Defendant also provided information about separation payments and agreements entered into with some members of the collective. *Id*. The Parties' cooperative exchange of information produced all necessary information that would have been sought in formal discovery, but without the costs, court intervention, and contention that occasionally characterizes the discovery process.

### c.    Seriousness of the litigation risks faced by the Parties

Settlement is favored where "there is significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Selk*, 159 F. Supp. 3d at 1175. As explained in detail

above, the *bona fide* disputes present in this case, particularly over liquidated damages, present a litigation risk to Plaintiffs of recovering significantly less at trial, and perhaps even nothing, than they will be receiving through the Settlement. The existence of *bona fide* disputes serves as a guarantee that the Parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *See Hogan v. Allstate Bev. Co*., 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011); *see also Ochs v. Modern Design, Inc*., No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

A *bona fide* dispute clearly exists here. Plaintiffs alleged that Defendant misclassified the collective members as independent contractors, but these allegations are not without risk. Defendant has raised several defenses, including, for example, that the contractors satisfy the independent contractor standard, and it accordingly paid them properly for all time worked.

Additionally, there was a risk that Plaintiffs would not succeed in certifying or maintaining a collective through trial. Prior to settlement, the Court has not yet conditionally certified the collective under 29 U.S.C. § 216(b). Such determinations would likely be reached only after discovery and rounds of extensive briefing. In the event that the Court granted conditional collective certification, Defendant could challenge such certification with a motion to decertify. *See, e.g., Mendez v. U.S. Nonwovens Corp.*, 2016 WL 1306551, at *3-*7 (E.D.N.Y. Mar. 31, 2016) (decertifying collective as the plaintiffs failed to show that their claims for overtime were supported by "generalized proof").

Finally, establishing liquidated damages, and/or the alleged off-the-clock hours that the contractors worked could be difficult. These issues could substantially affect the damages owed to Plaintiffs and Collective Members. Therefore, the Settlement is reasonable in light of these risks and should be approved.

### d.    Scope of any release provision in the Settlement Agreement.

The Settlement does not contain a general release of claims. The release only applies to wage-and-hour and overtime pay-related claims under the FLSA and any applicable state or local laws, as well as related tax claims. Scott Decl., ¶ 27(g), 31. Though the scope of the release refers

to wage-and-hour and overtime pay-related claims under state and local laws, Collective Counsel determined that only two individuals may possess state law claims under the law of California (and one of these individuals arguably already released such claims). The calculation of this Collective Member's possible recovery includes damages available for this state law claim if a timely Claim form is returned. If any Collective Member decides not to participate, she will release no claims.

### e.    Experience and views of counsel and the opinion of Named Plaintiffs.

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experiences with cases." *Kries et al. v. City of San Diego*, 2020 WL 3606613, at *7, quoting *Larsen v. Trader Joe's Co*., 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). Collective Counsel have years of FLSA and litigation experience. Counsel for the Collective support the Settlement and believes it is a fair and reasonable resolution of disputed claims. Both Plaintiffs also support the Settlement.

### f.    Possibility of fraud or collusion

The last *Selk* factors calls for courts to guard against the possibility of fraud or of collusion between the Parties. *Selk* emphasized that, "A key factor supporting this finding is that the amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records and an estimate of the degree of under-compensation during the relevant time period…This approach guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179. Here, as in *Selk*, the Settlement payments the Participating Collective Members will receive were calculated on an individualized basis, taking into account each Collective Member's compensation and overtime hours entitling them to FLSA overtime. Scott Decl., ¶ 27(f). Additionally, there is also no evidence that the Parties or their counsel colluded or pursued their own self-interests in reaching settlement. The settlement negotiations were at all times adversarial, and agreement was reached only with the assistance of an experienced neutral and after both Parties compromised on certain positions.

### 4.    The Requested Attorneys' Fees Are Reasonable.

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180. Courts should award appropriate compensation to ensure that competent counsel takes on cases protecting important public rights which may not otherwise be financially lucrative. *See City of Burlington v. Dague*, 505 U.S. 557, 568 (1992); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1164 (C.D. Cal. 2010). Courts consider the skill and experience of counsel in making FLSA fee awards. As discussed above, Collective Counsel has significant experience in handling FLSA actions. Collective Counsel requests one-third of the Settlement in attorneys' fees. This is reasonable given (a) the excellent result achieved for the Collective; and (b) the amount is <u>less than</u> the Collective Counsel's lodestar.

In FLSA settlements, district courts shall, "in addition to any judgment awarded to the Plaintiffs or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Typically, attorneys' fees under the FLSA are determined using the lodestar method." *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1185 (E.D. Cal. 2018). When FLSA Collective Counsel provides "information regarding the number of hours expended by counsel and their hourly rates which are the starting point for a lodestar analysis," should the court "accept the figures provided by counsel . . . [l]odestar amounts are presumed to be reasonable." *See id.* at 1185-1186 (finding attorney's fees near counsel's lodestar amount to be reasonable); *see e.g., Adoma v. Univ. of Phoenix*, 913 F. Supp. 2d 964, 981-984 (9th Cir. 2012) (finding where a lodestar amount was $801,445 with a 1.45 multiplier was well within the range of Ninth Circuit approvals).

Here, Collective Counsel requests attorneys' fees of $120,000.00 which is less than their actual lodestar of $135,079.50. Scott Decl., ¶ 48. Having satisfied the relevant factors generally considered by Ninth Circuit courts approving FLSA settlements, the Settlement Agreement should be considered a fair and reasonable resolution of a bona fide dispute over FLSA coverage.

### 5.    The Collective Representative Service Payments Are Fair And Reasonable.

Service payments are permitted in in FLSA cases to "to compensate class representatives for

work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Roes, 1-2 v. SFBSC Mgmt.*, *LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019).

The Settlement provides for a service payment of $5,000.00 to each of the Named Plaintiffs in recognition of the time they spent, the risks they incurred, and the results they obtained on behalf of their fellow Collective Members. Scott Decl., at Ex. 1 (Settlement Agreement) at ¶ 1.14, 4.2.1 Both Named Plaintiffs participated in all litigation-related activities requested of them by both sets of counsel and provided input regarding the facts and claims in this case. *Id*. at ¶ 32. They have been in continuous contact with Collective Counsel throughout the case, from the initial investigation of the case to the present. *Id.* In addition, they both attended the mediation of this matter. *Id.*

### 6. The Settlement's Proposed Cost Reimbursement Is Reasonable.

The Settlement's provision for reimbursement of costs is appropriate. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Fossett v. Brady Corp.*, 2021 WL 2273723, at *10 (C.D. Cal. Mar. 23, 2021) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Courts have approved cost requests when they are "reasonable under the circumstances and appropriately documented." *See Selk*, 159 F. Supp. 3d at 1181; *see e.g., In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166 (S.D. Cal. 2007) (finding "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees" to be reasonable and reimbursable costs because, inter alia, they were necessary for complex litigation).

To date, Collective Counsel has spent $1,227.75 in out-of-pocket costs on items such as filing fees and service of process, with costs continuing through full implementation of the Settlement. Scott Decl., ¶ 50. These costs were necessary for the prosecution of the litigation and were incurred reasonably. *Id.* Accordingly, these costs are reimbursable.

**V.**     **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify this action as a collective for purposes of settlement and approve the Settlement, which includes payments to the Participating Collective Members according to the distribution plan set forth therein, assignment of Settlement Administrator duties to CPT Group, Collective Representative Service Payments to the Named Plaintiffs, and attorneys' fees and cost payments to Collective Counsel.

A proposed Order is attached for the Court's convenience.

Respectfully submitted,

Dated: November 1, 2023                              RADFORD SCOTT LLP

                                                     By: /s/ *Justin M Scott*_____
                                                          Justin M. Scott
                                                          *Attorneys for Plaintiffs*