# EXHIBIT

# A

Matthew Righetti (Cal. State Bar No. 121012)
Righetti • Glugoski, P.C.
2001 Union Street, Suite 400
San Francisco, CA 94123
Tel.: (415) 983-0900
Fax: (415) 397-9005
Email: matt@righettilaw.com

Justin M. Scott (Cal. State Bar No. 302502)
Radford Scott LLP
160 Clairemont Avenue, Suite 610
Decatur, GA 30030
Tel.: (678) 780-4880
Fax: (478) 575-2590
Email: jscott@radfordscott.com

Tracey T. Barbaree (*admitted pro hac vice*)
Beth A. Moeller (*admitted pro hac vice*)
MOELLER BARBAREE LLP
1175 Peachtree Street N.E., Suite 1850
Atlanta, GA 30361
Tel.: (404) 748-9122
Email: tbarbaree@moellerbarbaree.com
Email: bmoeller@moellerbarbaree.com
*Attorneys for Plaintiffs and the*
*Putative Collective*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWEENA WASHINGTON and DAPHNE MOLEFE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIRCLE MEDICAL TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:23-cv-01420-LB<br><br>**DECLARATION OF JUSTIN M. SCOTT IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |

I, Justin M. Scott, declare the following to be true and correct, pursuant to 28 U.S.C. § 1746:

1.      I am a partner in the firm of Radford Scott LLP, counsel of record for Plaintiffs in this matter.

2.      I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims on behalf of the proposed FLSA Collective.

3.      I am admitted to practice before this Court and am a member of good standing of the bars of the State of California and Georgia.

4.      I respectfully submit this declaration in support of Plaintiffs' Motion for Approval of FLSA Collective Action Settlement.

5.      The information herein is within my personal knowledge unless otherwise specified.

**Qualifications and Relevant Case Experience**

6.      I graduated with honors from Emory University School of Law in 2007. I have practiced employment law since that time, with a specific focus on wage-and-hour litigation. I am a member in good standing of both the California and Georgia bars and have litigated employment matters throughout the country. For the majority of my career, I represented defendants in employment matters, practicing with large law firms, most recently, Paul Hastings LLP. I have tried multiple employment cases to verdict, including a bellwether wage-and-hour misclassification case in the United States District Court for the Central District of California, *Bargas v. Rite Aid Corp.*, 245 F. Supp. 3d 1191 (C.D. Cal. 2017).

7.      I have litigated numerous wage-and-hour class and collective actions and scores of individual wage-and-hour actions. I have been counsel of record in dozens of class, collective, or hybrid Rule 23/216(b) wage-and-hour actions, including but not limited to the following matters:

- *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361 (JPO) (S.D.N.Y.) (hybrid Rule 23/collective action alleging misclassification and failure to pay overtime in violation of the FLSA and New York Labor Law)

- *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317 (M.D. Pa.) (collective action alleging misclassification and failure to pay overtime in violation of the FLSA)

- *Eaton et al. v. Rite Aid Corp. et al.*, No. 090400455 (Philadelphia Court of Common Pleas) (putative class action alleging misclassification and failure to pay overtime in violation of Pennsylvania state laws)

- *Ibea v. Rite Aid Corp.*, No. 11-cv-5260(JSR)(HBP) (S.D.N.Y.) (collective action alleging misclassification and failure to pay overtime in violation of the FLSA)

- *Deane et al. v. Fastenal Co.*, No. 11-CV-0042 YGR (N.D. Cal.) (putative collective action alleging misclassification and failure to pay overtime in violation of the FLSA)

- *Winn v. Jacobs Engineering Group Inc.*, No. 2:11-cv-01571-DCN-BHN (D.S.C.) (putative collective action alleging misclassification and failure to pay overtime in violation of the FLSA)

- *Bentley v. Flood Brothers, Inc.*, 1:13-cv-02282-RWS (N.D. Ga.) (collective action alleging failure to pay overtime in violation of the FLSA) (co-lead counsel)

- *Eason v. Bridgewater & Associates, Inc.*, 108 F. Supp. 3d 1358 (N.D. Ga. 2015) (collective action alleging failure to pay overtime in violation of the FLSA)

- *Pacheco v. TFS Facility Services Ga., LLC*, 1:13-cv-03473-TCB (N.D. Ga.) (putative collective action alleging failure to pay overtime in violation of the FLSA) (co-lead counsel)

- *Campbell et al. v. Vitran Express, Inc.*, No. CV 11-5029 RGK (SHx) (C.D. Cal.) (representative action brought under California's Private Attorney General Act alleging violations of California Labor Code based on alleged failure to provide meal and rest breaks)

- *Meza v. S.S. Skikos*, No. 3:15-cv-01889-TEH (N.D. Cal.) (hybrid class and collective action alleging failure to pay wages in violation of the FLSA and the California Labor Code)

- *Helmick et al. v. Air Methods Corp.*, No. RG13665373 (Superior Court of Alameda County, California) (class action alleging violations of California Labor Code based on alleged misclassification and failure to pay wages)

- *Dyer et al. v. Alorica, Inc.*, No. 1:18-cv-03900 (N.D. Ga.) (putative collective action alleging failure to pay overtime in violation of the FLSA based on allegations of off-the-clock work and failure to include bonuses in the regular rate of pay)

- *Thomas v. Promised Land Women's Ctr. Inc.*, No. 1:19-cv-01487-AT (N.D. Ga.) (collective action alleging failure to pay overtime) (lead counsel)

- *Brown v. Paws, Whiskers & Wags, LLC*, No. 1:19-cv-00395-AT (N.D. Ga.) (class and collective action alleging failure to pay overtime and asserting state law claims based on deductions of alleged meal periods) (lead counsel)

- *Martinez et al. v. Woodvalley Landscape, Inc.*, No. 1:20-cv-04011-LMM (N.D. Ga.) (collective action alleging failure to pay overtime) (lead counsel)

- *Brighton v. HisGrip LLC d/b/a HisGrip Home Care et al.*, No. 1:20-cv-04760-ELR (N.D. Ga.) (collective action alleging failure to pay overtime) (lead counsel)

- *Culver et al. v. ATM Response, Inc. et al.*, 1:20-cv-03551-TWT (N.D. Ga.) (collective action alleging failure to pay overtime and retaliation) (lead counsel)

8.      I have co-authored multiple articles on wage-and-hour law in leading publications and have been a contributing editor to the treatise, *Employment Discrimination Law, Lindemann & Grossman*.

9.      In March 2018, I founded Scott Employment Law, P.C., where I focus entirely on employment litigation and advice. My firm recently merged with another employment litigation firm to form Radford Scott LLP ("Radford Scott"). I represent both plaintiffs and defendants in a wide variety of employment law matters. I frequently represent clients on an hourly basis and customarily bill my hourly clients at a rate of $415 per hour.

10.     I have been selected numerous times as a *Rising Star* by Super Lawyers Magazine, both in Georgia and California, and was selected as a Super Lawyer in Employment Law for 2021, 2022 and 2023.

**Case Proceedings and Settlement Discussions:**

11.     Prior to filing the Collective Action Complaint in this matter, I reviewed and revised the Collective Action Complaint in conjunction with my co-counsel at Moeller Barbaree LLP ("Moeller Barbaree"). In the course of the representation, I researched and strategized regarding claims, potential damages, and defenses, had numerous conferences with co-counsel and multiple conferences with opposing counsel, reviewed other potentially-relevant litigation and reviewed all filings in the case.

12.     On March 27, 2023, Plaintiffs filed their Collective Action Complaint. Thereafter, on May 15, 2023, Defendant filed its Answer.

13.     Plaintiffs allege that Defendant failed to pay Plaintiffs and others similarly situated for all hours worked and for overtime at the time and one-half rate for hours worked over forty (40) in each workweek. Plaintiffs claim that Defendants misclassified them and others similarly situated as independent contractors and paid them on an hourly basis and at the same hourly rate for all

recorded hours worked. Plaintiffs also allege that they and other independent contractors spent time working off-the-clock for which they were not compensated at all, including time spent logging into Defendant's software systems before clocking in and time worked during meal breaks for which they were required to clock out.

14. Defendant denies that Plaintiffs were misclassified and further denies that Plaintiffs spent compensable time working off-the-clock. Defendant contends it maintains a policy prohibiting off-the-clock work and further contends it had no knowledge that any collective member was performing work off-the-clock. Defendant also contends that even if it could be found liable, its conduct was not "willful" and therefore a two-year statute of limitations would apply to Plaintiffs' claims. Defendant further argues that liquidated damages would not be appropriate in this case.

15. Early in the case, counsel for the Parties conferred and agreed to work in good faith to resolve Plaintiffs' collective claims rather than engaging in timely and costly litigation. The Parties sought a stay of the case pending mediation and exchanged substantial information regarding the time and pay of Plaintiffs and the collective members. On June 28, 2023, the Parties filed a joint stipulation to stay proceedings so that they could engage in efforts to explore a potential resolution of this action through private mediation, which the Court granted (Doc. Nos. 23 and 24).

16. On July 26, 2023, Defendant produced detailed pay data information for the Named Plaintiffs and Collective Members (totaling 94 individuals) for pay periods starting on March 27, 2020, and ending on July 6, 2023. The payroll data contained information for each Collective Member's daily hours worked, including overtime hours worked for which Plaintiffs were seeking compensation in this proceeding, and all forms of compensation. Defendant also provided information about separation payments and agreements entered into with some Collective Members.

17. Collective Counsel reviewed the detailed time and pay records for all Collective Members and thereafter analyzed the records to prepare a damages model in preparation for the mediation. For mediation, Collective Counsel prepared a spreadsheet with damages assuming success on all of the claims in the Complaint for the collective.

18. The damages model was broken down into the overtime claim for which records were available, and the off-the-clock claim, which required Plaintiffs to estimate the amount of time

spent working off the clock in each workweek. The damages model calculated liquidated damages, interest and other statutorily-available damages. In addition, to determine potential additional non-FLSA damages based on the facts on which the claims in the Complaint are based (i.e. misclassification, failure to pay overtime and off-the-clock work), Collective Counsel (i) assessed any state law damages applicable to the factual allegations for each Collective Member; and (ii) calculated for each Collective Member the employer share of taxes had the payments been treated as wages by Defendant. Collective Counsel determined that only two Collective Members had additional state law claims, both under California law.

19.    Using Defendant's records, Collective Counsel calculated the actual unpaid recorded overtime hours worked by each Collective Member for each workweek during the relevant time period, then multiplied half the regular rate by the overtime hours worked to determine the overtime wages due.  Collective Counsel then added the alleged overtime wages due and liquidated damages to establish the potential total owed damages for each Collective Member under the FLSA for recorded hours.

20.    Based on the data provided by Defendant, counsel for Plaintiffs calculated that the Plaintiffs and the other Collective Members are owed a total of $128,624.45 in unpaid overtime for all recorded hours worked over 40 in a workweek during the relevant time period.

21.    Plaintiffs also allege that they were not paid for time worked off the clock on a per workweek basis. Because evidence of work performed off the clock is not found in the records, for purposes of damages modeling, Plaintiffs relied upon estimates from the two Named Plaintiffs and extrapolated them for the Collective Members. Plaintiffs estimate that the time they spent logging into Defendant's software systems before clocking in and the time worked during meal breaks for which they were required to clock out likely exceeds one (1) hour each workweek. For purposes of damages calculations, it was assumed that this off the clock time was time worked over 40 hours in each workweek and was thus calculated in the damages model at an overtime rate of pay.

22.    Based on the data provided by Defendant, counsel for Plaintiffs calculate that the Plaintiffs and the other Collective Members are owed a total of $120,328.93 for alleged off-the-clock work, with an equal amount for liquidated damages. This is a vigorously disputed issue, as

Defendant contends the Collective Members did not work off the clock, and to the extent they did, Defendant argues such time was *de minimus* and further denies that such should be at an overtime rate of pay.

23.    In addition to time and pay records, Defendant provided Plaintiffs with information regarding separation agreements entered into between Defendant and some Collective Members. According to Defendants' records, the Collective Members who executed the Termination of Consulting Agreement and Release were paid separation pay for a release of claims, which included any wage-and-hour claims under both the FLSA and applicable state laws. Defendant did not contend that the Termination of Consulting Agreement and Release was an effective release of Collective Members' FLSA claims. During the mediation, the separation pay amounts for the Collective Members who signed the releases were applied to non-wage damages to reduce the potential recovery of those persons for non-FLSA claims. For example, one of the two Collective Members who had additional wage claims under California law that could have been asserted based on the facts and claims in the Complaint executed the Termination of Consulting Agreement and Release. Accordingly, the estimated potential recovery for that individual was reduced by the separation pay amount.

24.    As part of the settlement discussions, Plaintiffs also sought recovery of unpaid federal taxes that would have been paid by Defendant had the Collective Members been properly classified as employees. It is my understanding that, had Collective Members had not been treated as independent contractors and paid as W-2 employees, Circle Medical would have paid the employer's share of withholding, which amounts to 7.65% of all earnings. Instead, on information and belief, Plaintiffs and the Collective Members were required to pay that amount themselves as self-employment taxes. Collective Counsel calculated these taxes for each Collective Member for purposes of the mediation. Because of the release of claims entered into by some Collective Members, which contained a release of any tax-related claims, the potential recovery of unpaid employment taxes for those persons was reduced by the severance amount they received.

25.     Following the review of this data, and the calculations based thereon, Plaintiffs made an initial settlement demand and the parties conferred regarding the damages calculations prior to the mediation on September 26, 2023.

26.     On September 26, 2023, this matter was mediated with the assistance of Mediator Lynn Cohn, Clinical Professor of Law and Co-Director of the Center of Negotiation, Mediation, and Restorative Justice at Northwestern University School of Law, which resulted in the current Settlement.

**The Terms of the Settlement:**

27.     A copy of the parties' Collective Action Settlement Agreement is attached hereto as **Exhibit 1**. The general terms of the Parties' Settlement are as follows:

a.      Defendant will pay a total of three hundred sixty thousand dollars ($360,000.00) plus Defendant's share of required taxes on the Wage Portion of payments made to Participating Collective Members (the "Gross Settlement Amount" or "GSA"), inclusive of attorneys' fees and costs, in settlement of the claims asserted by Plaintiffs on behalf of the collective group. (Ex. A, ¶ 1.20).

b.      The time period relevant to the Settlement is March 27, 2020 through the date the Court grants Approval of the Settlement. (*Id*. at ¶ 1.6).

c.      Plaintiffs will apply to the Court for, and Defendant will not oppose, an award of attorneys' fees in the amount of $120,000.00, representing approximately 33.33% of the GSA. (*Id*. at ¶ 4.2.2).

d.      Plaintiffs will apply for, and Defendant will not oppose, an award of no more than one-thousand two-hundred twenty-seven dollars and seventy-five cents ($1,227.75) for costs and expenses of litigation. (*Id*.)

e.      Collective Counsel will apply to the Court for, and Defendant will not oppose, a Collective Representative Service Payment for each Plaintiff in the amount of five thousand dollars ($5,000.00) for their direct participation in bringing and prosecuting this action. (*Id*. at ¶ 4.2.1).

DECLARATION OF JUSTIN M. SCOTT IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT CASE NO. 3:23-CV-01420-LB

8

f.    After deduction of awarded attorneys' fees, costs, administrative costs and service awards, the Net Settlement Amount ("NSA") will be distributed to the Plaintiffs and Participating Collective Members. Each Collective Member will be allocated a pro rata share of the Net Settlement Fund pursuant to an allocation formula based on the number of recorded hours they worked during each workweek during the relevant period and based on their regular pay rate during the relevant weeks. The entire NSA will be distributed to the Participating Collective Members and no amount will revert to Defendant. (*Id*. at ¶ 4.2.4).

g.    All Participating Collective Members (Collective Members who consent to become a party to this Action by timely returning a Consent Form to the Settlement Administrator) will release all claims or causes of action they have for unpaid overtime and minimum wage claims under federal, state, and local laws while they worked for Defendant as an independent contractor between March 27, 2020 and Court approval of the Settlement. The Settlement does not contain a general release of claims.  The release only applies to wage-and-hour and overtime pay-related claims under the FLSA and any applicable state or local laws, as well as related tax claims.  (*Id*. at ¶ 6.1).

28.    Based on Collective Counsel's calculations, Plaintiffs' best possible recovery of the alleged unpaid overtime in the three-year maximum limitations period is approximately $128,864.85, with an equal amount for liquidated damages, for a total of $257,729.70. If the off-the-clock claim is included in the calculations, Plaintiffs estimate that the best possible recovery, assuming one hour per week at an overtime rate of pay, is an additional $120,328.93, with an equal amount for liquidated damages, for a total of $240,657.86.  For the overtime and off-the-clock claims combined, the total maximum possible recovery is $498,387.56.  The off-the-clock claim in particular is vigorously disputed by Defendant and would be more difficult to prove on a collective basis. It is also uncertain whether liquidated damages would be warranted for that claim if liability was proven. If the off-the-clock claim is excluded, the total Settlement amount of $360,000.00

represents more than 139% of the best possible recovery for Plaintiffs.  If the off-the-clock claim is included, the total Settlement amount represents approximately 72% of the best possible recovery.

**The Settlement is Fair, Reasonable & in the Interest of the Collective:**

29.    The Settlement recognizes the risks and significant time and expense of continued litigation for all parties.

30.    The Settlement will cover 94 Opt-In claims within the relevant period (March 27, 2023 through the Approval of the Settlement). As set forth above, the total settlement amount represents between 72-139% of the best possible recovery for the Collective Members on FLSA Claims if liquidated damages are included. This settlement amount is therefore reasonably related to the "true settlement value" considering the risk that both parties would have faced moving forward with litigation and the tenuous nature of the off the clock claim and likelihood of a finding of willfulness.

31.    The Settlement does not contain a general release of claims.  The release only applies to wage-and-hour and overtime pay-related claims under the FLSA and any applicable state or local laws, as well as related tax claims.  Though the scope of the release refers to wage-and-hour and overtime pay-related claims under state and local laws, Collective Counsel determined that only two individuals may possess state law claims under the law of California (and one of these individuals arguably already released such claims). The calculation of this Collective Member's possible recovery includes damages available for this state law claim if a timely Claim form is returned.  If any Collective Member decides not to participate, he or she will release no claims.

32.    The parties agreed to CPT Group as the settlement administrator.  CPT Group provided an estimate of $16,032.27 to administer the Settlement but agreed to a discounted flat rate of $11,000.00.

33.    In my experience, this Settlement is fair, reasonable, and in the best interests of the collective given the risks of litigation, risk relative to trial, the time it would take to get to a trial, the lack of opt-in participation, and realistic potential recovery. This case was settled through arm's-length negotiations with the assistance of a professional, reputable mediator. During the mediation

with mediator Lynn Cohn, the Parties assessed the risks and strengths of their respective positions and with the assistance of the mediator, reached this Settlement.

34.     I believe this is an excellent result for Plaintiffs and the Collective Members. I believe that, if the case were not to settle and were to proceed, Plaintiffs would succeed on the merits of their claims and that there are strong arguments for certification. However, based on my experience in the area and my review of relevant caselaw, I recognize the following areas of material dispute and challenges to litigating this case on a collective basis: the highly factual showing as to whether the Collective Members were misclassified as independent contractors, the showing of willfulness to achieve the three-year statute of limitations; whether Defendant could demonstrate good faith to defeat claims for liquidated damages; conditional certification and potential motions for decertification of the collective action; and Defendant's arguments that some or all of the off-the-clock work was *de minimus*, or should be paid only at a straight time rate. Indeed, Defendant has indicated that it would vigorously defend against Plaintiffs' claims and litigate the issues noted above.

35.     Given these risks, I believe that we have reached an excellent deal for Plaintiffs and the Collective Members. The collective action is a complex and nuanced vehicle for vindicating employee wage-and-hour rights, and we have recovered a significant portion of the maximum unpaid overtime wages that we calculate are owed to Plaintiffs and Collective Members for the full statutory period. All of this was accomplished without the necessity of filing a motion for conditional certification, conducting extensive discovery, responding to a motion for decertification, and/or responding to dispositive motions, trial, possible appeals, and/or post-judgment collection efforts. Further, Plaintiffs and Collective members will receive substantial recovery now as opposed to an uncertain amount at some point in the future.

36.     The Named Plaintiffs both participated in the mediation and support the Settlement.

**Named Plaintiff Service Award is Warranted:**

37.     I believe the requested service award of $5,000 each for Plaintiffs Edweena Washington and Daphne Molefe is reasonable. Both Named Plaintiffs participated in all litigation-related activities requested of them by both sets of counsel and provided input regarding the facts

and claims in this case.  They have been in continuous contact with Collective Counsel throughout the case, from the initial investigation of the case to the present.  In addition, they both attended the mediation of this matter.  I believe in this case, a $5,000 incentive for each Plaintiff is warranted and is reasonable in recognition of the time they spent,  the risks they incurred, and the results they obtained on behalf of their fellow Collective Members.

**The Requested Attorneys' Fees and Costs are Reasonable:**

38.     There was a significant amount of work performed by Collective Counsel. Radford Scott maintains a practice of keeping contemporaneous time records for work performed by attorneys on litigation matters.

39.     I have worked closely with co-counsel to divide tasks, ensure efficient case management, and prevent duplication of efforts. By assigning specific tasks among firms, we were able to avoid replicating work. Only where it was necessary to have involvement from multiple firms and/or attorneys, such as during the mediation, did such involvement occur.

40.     For the purposes of any lodestar cross-check, effective as of October 1, 2023, my standard hourly billing rate is $415 (it was $400 prior to that time). Although the majority of my practice involves contingency fee representation of employees, I occasionally select hourly-paying clients to provide employment law services at my standard rate of $415. That is the rate that has been billed, and that I expect to be paid, for all standard hourly representation.

41.     Radford Scott's rates, as well as those of Moeller Barbaree LLP, are in line with or substantially less than the hourly rates that attorneys have submitted by sworn declaration as reasonable market rates for FLSA litigation in the Northern District of Georgia, where both firms typically practice.  *See, e.g.,* Affidavit of Michael W. Johnston [ECF #126] filed April 5, 2019 in *Watts v. Silverton Mortgage Specialists, Inc.*, No. 1:17-cv-03574-SCJ (N.D. Ga.) (King & Spalding attorneys' affidavit in support of request for award of attorney's fees for sanctions in representing defendant in a mortgage underwriter misclassification case at partner-level hourly rates of $1,050 and $910, counsel-level hourly rate of $605, and associate-level hourly rate of $510).

42.     They are similarly in line with the hourly rates that attorneys have submitted in the Northern District of Georgia for ADEA employment litigation, which is governed by essentially the

same statutory provisions on damages as the FLSA. *See generally Godwin v. Wellstar Health Systems, Inc.*, No. 1:12-cv-03752 [ECF #125-1, 146-1, and 146-2] (N.D. Ga.) (requesting approval of attorney's fees at plaintiff's counsel Edward Buckley's 2015 hourly rate of $525), supported by Declaration of John F. Wymer [ECF #125-6] (opining, as disinterested attorney practicing within the relevant market and with knowledge of Atlanta billing rates, that $525 rate in 2015 was "reasonable and consistent with rates charged by other firms and lawyers representing employers and representing employees") and Declaration of Andrew Coffman [ECF #125-7] (opining, as disinterested attorney practicing within the relevant market and with knowledge of Atlanta billing rates, that $525 rate in 2015 was reasonable and well within hourly rates charged by similar employment counsel, noting his employee-side law firm bills at partner rates of $525 and higher, and opining that $435 hourly rate for employment law partners with 9 and 10 years of experience and $375 for associates with 7 and 9 years of experience was reasonable in this district).

43.    Radford Scott and Moeller Barbaree's respective rates for litigation in this district are also in line with those approved by Georgia federal courts as reasonable for attorneys with similar years of specialized practice experience. *See Anderson v. Southern Home Care Servs., Inc.*, No. 1:13-cv-00840-LMM [ECF #96-1, 106] (N.D. Ga. May 20, 2019) (approving payment of common fund wage and hour settlement at 1.43 multiplier of lodestar based on J. Derek Braziel's $650 partner rate for 24-year attorney with similar experience in wage and hour litigation and editorial work on ABA's Fair Labor Standards Act treatise); *see also Pledger v. Reliance Trust Co.*, No. 1:15-cv-04444-MHC [ECF 293] (N.D.Ga. Mar. 8, 2021) (granting final approval of class action settlement with one-third fees constituting positive multiplier of lodestar, by lodestar crosscheck at approved rates for "at least 25 years of experience, $1,060 per hour; …15-24 years of experience, $900 per hour;…5-14 years of experience, $650 per hour;…for Paralegals and Law Clerks, $330 per hour); *Henderson v. Emory Univ.*, Civil Action No. 16-2920-CAP, 2020 U.S. Dist. LEXIS 218676, at *6 (N.D. Ga. Nov. 4, 2020) (same);  *Smith v. Floor & Decor Outlets of Am., Inc.*, No. 1:15-cv-04316-ELR [ECF 67 and 69], 2017 U.S. Dist. LEXIS 227308, at *13 (N.D. Ga. Jan. 10, 2017) (approving as reasonable consumer class action counsel's partner rate of $750 per hour in conducting lodestar cross-check of percentage of the fund fee awarded at 2.5 multiplier); *Griffin v.*

*General Mills, Inc.*, 157 F. Supp. 3d 1350, 1355-56 (N.D. Ga. 2016) (finding hourly rates in 2016 of $650 for a partner with 35 years' experience, and $455 for an associate, with agreed upon 10% discount, to be reasonable in ERISA case).

44.    Radford Scott and Moeller Barbaree's respective rates for litigation in Atlanta, Georgia are also in line with partner-level rates charged by attorneys practicing employment law in Atlanta as indicated by the outdated 2013 Daily Report "Going Rate" survey listing outdated 2011-12 employment practitioner partner rates as high as $730, $685, and $610, and employment practitioner associate rates as high as $470, $415, and $405. *See* Declaration of Jeff Sand filed in *Sanders v. Makespace Labs, Inc.*, No. 1:18-cv-10016-ALC-DCF [ECF 74] (S.D.N.Y) (compiling rates reported by all eight Atlanta firms who reported partner rates in 2014, at average of $560, citing and attaching at 74-3 the 2014 National Law Journal Billing Survey); *see generally Kenny A. v. Perdue*, No. 1:02-CV-1686-MHS, 2010 U.S. Dist. LEXIS 155255, at *30-31 (N.D. Ga. May 13, 2010) (surveying rates charged by attorneys in Atlanta area, noting average Atlanta partner rate was $476 per hour).

45.    Radford Scott's lodestar alone for attorney work through October 31, 2023, totaled $17,034.50 for 42.2 attorney hours billed at standard rates in this litigation. Obviously, additional fees were and will continue to be incurred in finalizing the Joint Motion for Settlement Approval, and this Declaration, as well as anticipated additional work involved in a potential approval hearing and in assisting with administering the Settlement and responding to inquiries from Collective Members.

46.    The tables below reflect the lodestar and costs that have been expended by all Collective Counsel.

47.    All of Collective Counsel's significant time and resources spent on this matter were performed on a contingent basis, without any guarantee of payment.

48.    As confirmed in their individual firm declarations, Collective Counsel expended a total of **272.9** hours in this litigation, with a total lodestar of **$135,079.50** as follows:

| Firm | Fees |
|------|------|
| Radford Scott LLP | $17,034.50 |
| Moeller Barbaree LLP | $106,435.00 |
| Righetti Glugoski, P.C. | $11,610.00 |
| **TOTAL** | $135,079.50 |

Thus, even without factoring in those additional fees that were and will be incurred after October 31, 2023, the fee amount to be paid by this Settlement is within the range of reasonable attorney's fees for FLSA settlements if subjected to the optional lodestar cross-check based on the combined work performed by the law firms representing Plaintiffs in this action.

49.    To the extent that Local Rule 54-5(b) applies, Collective Counsel maintain that this Declaration is compliant because it contains a "statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained" and "brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services." *See* N.D. Cal. Local Rule 54-5(b)(2)-(3). Because their time records describe and reflect Collective Counsel's litigation strategy, attorney work product, and attorney-client communications, Collective Counsel will not file those records publicly, or share them with Defendant, in unredacted form as doing so could harm Plaintiffs and/or Collective Counsel. However, Collective Counsel are willing to provide their time records for *in camera* review, if the Court so requires. *See* N.D. Cal. Local Rule 54-5(b)(2) ("Depending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection, including in camera inspection, as the Judge deems appropriate").

50.    Collective Counsel incurred actual litigation costs in these actions in the amount of **$1,227.75.** The costs incurred primarily consist of the filing fee, *pro hac* vice fees and service of process costs which were necessary for this litigation. My firm incurred costs of $432, which represents the filing fee and other costs in this matter.

1    I declare under penalty of perjury under the laws of the United States and the State of

2   California that the foregoing is true and correct.

3       Dated this 1st day of November 2023 at Decatur, Georgia.

4                                              RADFORD SCOTT LLP

5

6                                              By: /s/ Justin M Scott_____

7                                                  Justin M. Scott
                                                   *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# 1

# COLLECTIVE ACTION SETTLEMENT
## AGREEMENT

This Collective Action Settlement Agreement ("***Agreement***") is made and entered into by and between Plaintiffs Edweena Washington and Daphne Molefe (together "***Plaintiffs***"), individually and on behalf of all Collective Members, on the one hand, and Defendant Circle Medical Technologies, Inc. ("***Defendant***"), on the following terms:

1. **DEFINITIONS**.

   1.1    "***Action***" means the FLSA collective action commenced by Plaintiffs in the United States District Court for the Northern District of California, entitled *Edweena Washington and Daphne Molefe v. Circle Medical Technologies, Inc.*, Case No. 21STCV09582.

   1.2    "***Administrator***" means CPT Group, the third-party firm the Parties have agreed to appoint to administer the Settlement.

   1.3    "***Administration Costs Payment***" means the amount the Administrator will be paid from the Gross Settlement Amount to reimburse its reasonable fees and expenses in accordance with the Administrator's "not to exceed" bid submitted to the Court in connection with Approval of the Settlement.

   1.4    "***Approval***" or "***Approval Order***" means the Court's Order Granting Approval of the Settlement, including certifying the Action as an FLSA collective action for settlement purposes and approving the Collective Notice in the form attached to this Agreement.

   1.5    "***Claim Form***" means the Court approved Proof of Claim Form and Release, in the form attached as "Exhibit B" and incorporated by reference into this Agreement, that a Collective Member must complete and timely return to the Administrator to indicate their consent to join the Action and participate in the Settlement.

   1.6    "***Claim Period***" means the period starting on March 27, 2020, and ending on the date of entry of the Approval Order by the Court.

   1.7    "***Collective Counsel***" means Matthew Righetti of Righetti Glugoski, P.C., Justin M. Scott of Radford Scott LLP, and Tracey T. Barbaree and Beth A. Moeller of Moeller Barbaree LLP.

   1.8    "***Collective Counsel Fees Payment***" and "***Collective Counsel Litigation Expenses Payment***" mean the amounts allocated to Collective Counsel for reimbursement of reasonable attorneys' fees and expenses, respectively, incurred by Plaintiffs to prosecute the Action.

   1.9    "***Collective Data***" means, for each Collective Member, their: (a) full name; (b) mailing address; (c) Social Security Number; (d) start date of work for Defendant; (e) date of termination of work for Defendant; (f) rate(s) of pay; (g) email address, and (h) amount of alleged overtime pay owed for alleged overtime hours worked during the Claim Period.

1

1.10    "*Collective Member*" means all persons who have worked for Defendant in the United States as an independent contractor at any time during the Claims Period in positions in administrative customer support, prescription, billing, and patient advocate/care/coordinator roles, using job titles including but not limited to, Patient Care Coordinator I, Patient Care Coordinator II, Patient Care Advocate, Patient Care Coordinator, RX Patient Care Advocate/Coordinator, Pharmacy Support Specialist, and Billing Support Advocate/Coordinator.

1.11    "*Collective Member Address Search*" means the Administrator's investigation and search for current Collective Member mailing addresses using all reasonably available sources, methods and means including, but not limited to, the National Change of Address database, skip traces, and direct contact by the Administrator with Collective Members.

1.12    "*Collective Notice*" means the Court approved Notice of Collective Action Settlement, to be mailed and emailed to each of the Collective Members in the form, without material variation, attached as "Exhibit A" and incorporated by reference into this Agreement.

1.13    "*Collective Representatives*" means the named Plaintiffs in the Complaint in the Action, Edweena Washington and Daphne Molefe.

1.14    "*Collective Representative Service Payment(s)*" means the payment to each of the Collective Representatives for initiating the Action and providing services in support of the Action.

1.15    "*Complaint*" means the Collective Action Complaint for Violation of the Fair Labor Standards Act filed by Plaintiffs in the Action on March 27, 2023.

1.16    "*Court*" means the United States District Court for the Northern District of California.

1.17    "*Defendant*" means the named defendant in the Action, Circle Medical Technologies, Inc.

1.18    "*Defense Counsel*" means Seth L. Neulight of Nixon Peabody LLP.

1.19    "*Effective Date*" means the date the Court in the Lawsuit has approved the Settlement, including by certifying the Action as an FLSA collective action and approving the Collective Notice in the form attached hereto.

1.20    "*Gross Settlement Amount*" means the gross sum of Three Hundred and Sixty Thousand Dollars and No Cents ($360,000.00) plus Defendant's share of required taxes on the Wage Portion of payments made to Participating Collective Members, which are the total amounts Defendant agrees to pay under the Settlement. The Gross Settlement Amount will be used to pay Individual Settlement Awards, the Collective Counsel Fees Payment, the Collective Counsel Litigation Expenses Payment, the Collective Representative Service Payments, and the Administration Costs Payment.

1.21    "*Individual Maximum Potential Recovery*" means the amount of alleged overtime wages and any additional potential damages owed to each Collective Member for the Claim Period

(including liquidated damages, interest, statutory penalties and/or other potential damages) based on the claims and facts alleged in the Complaint filed in the Action.

1.22    "*Individual Settlement Award*" means the Participating Collective Member's pro rata share of the Net Settlement Amount calculated in accordance with this Agreement.

1.23    "*Net Settlement Amount*" means the Gross Settlement Amount, less the following payments in the amounts approved by the Court: Collective Representative Service Payments, Collective Counsel Fees Payment, Collective Counsel Litigation Expenses Payment, and the Administration Costs Payment. The remainder is to be paid to Participating Collective Members as Individual Settlement Awards.

1.24    "*Non-Participating Collective Member*" means any Collective Member who does not timely submit a Claim Form to the Administrator.

1.25    "*Notice Packet*" means the Collective Notice and Claim Form to be mailed and emailed by the Administrator to each Collective Member.

1.26    "*Participating Collective Member*" means a Collective Member who timely submits a Claim Form to the Administrator indicating their consent to join the action and participate in the Settlement.

1.27    "*Party*" or "*Parties*" means either Plaintiffs or Defendant individually or collectively.

1.28    "*Plaintiffs*" means Edweena Washington and Daphne Molefe, the named plaintiffs in the Action.

1.29    "*Released Claims*" means the claims being released by Participating Collective Members pursuant to the Settlement as described in Section 6.1 below.

1.30    "*Released Parties*" means Defendant, its parent WELL Health Technologies Corporation, and each of their past and present directors, officers, shareholders, managing agents, successors, and assigns.

1.31    "*Response Deadline*" means sixty (60) days after the Administrator mails and emails the Notice Packet to Collective Members, which shall be the last date on which Collective Members may: email, mail, or electronically submit the Claim Form. Collective Members to whom Notice Packets are resent after having been returned undeliverable to the Administrator shall have an additional 14 calendar days after the Response Deadline has expired in which to submit a Claim Form.

1.32    "*Settlement*" means the disposition of the Action effected by this Agreement and the Judgment.

1.33    "*Total Maximum Potential Recovery*" means the total sum of all Individual Maximum Potential Recovery amounts calculated for all Collective Members.

3

**2.    RECITALS**.

2.1    On March 27, 2023, Plaintiffs commenced this Action by filing a Complaint alleging one count of failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"). Plaintiffs allege that they and all others in the putative collective were non-exempt employees of Defendant misclassified as independent contractors, and that Defendant failed to pay them and others in the putative Collective all wages due for hours worked, including overtime wages.  Plaintiffs seek relief for themselves and all other putative Collective Members for alleged unpaid wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs. Defendant denies the allegations in the Complaint and further denies that it violated the FLSA or that Plaintiffs or other putative Collective Members are entitled to damages or any other relief thereunder.

2.2    On April 24, 2023, the Parties entered into a Tolling Agreement wherein they agreed that, with respect to claims asserted based upon, relating to, or arising from the allegations of the Complaint in the Action, the applicable statute of limitations on such claims is deemed tolled as of April 24, 2023, and that the tolling period would continue until either Party gives written notice of cancellation of the agreement.

2.3    In preparation for a mediation and negotiation of this Settlement, Plaintiffs obtained from Defendant, through informal discovery: (a) a list of all individuals in the proposed collective with their names, positions, work start dates, work end dates, and rates of compensation; (b) the time and pay records of each person in the proposed Collective; and (c) identification of the individuals in the proposed Collective who signed severance release agreements in exchange for monetary payments, and the amounts of those severance payments.

2.4    On September 26, 2023, the Parties participated in a full-day mediation presided over by Lynn P. Cohn, Clinical Professor of Law and Co-Director of the Center of Negotiation, Mediation, and Restorative Justice at Northwestern University School of Law, which led to this Agreement to settle the Action.

2.5    The Court has not granted certification of Plaintiffs' FLSA claim.

**3.    COLLECTIVE CERTIFICATION**.  For purposes of this Settlement only, and without any admission by any Party in this or any other matter, the Parties stipulate to certification of the Action as a collective action under the Fair Labor Standards Act pursuant to 29 U.S.C. section 216(b), with a collective consisting of all Collective Members, subject to the terms and conditions set forth herein.  If not all the conditions in this Agreement are met, then the stipulation to certification of the settlement collective herein shall be null and void, and of no force and effect; and the Parties shall each retain all their rights, remedies, defenses, and contentions for and against collective certification.  The provisional stipulation to collective certification contained in this Agreement shall not be argued by any of the Parties nor considered by the Court in ruling on collective certification in the Action if the Settlement is not effectuated for any reason.

**4.    MONETARY TERMS**.

4.1 <u>No Reversion of Gross Settlement Amount</u>. The Administrator will disburse the entire Gross Settlement Amount in accordance with this Agreement. None of the Gross Settlement Amount will revert to Defendant. Additionally, Defendant shall pay all costs associated with the mediation.

4.2 <u>Payments from the Gross Settlement Amount</u>. The Administrator will make and deduct the following payments from the Gross Settlement Amount, in the amounts specified by the Court in the Approval Order:

4.2.1 <u>To Plaintiffs</u>: A Collective Representative Service Payment of not more than Five Thousand Dollars ($5,000.00) for each of the Plaintiffs in addition to any Individual Settlement Awards that Plaintiffs are entitled to receive as Participating Collective Members. Defendant will not oppose Plaintiffs' request for Collective Representative Service Payments that do not exceed this amount. As part of the motion for Settlement Approval Plaintiffs will seek Court approval for any Collective Representative Service Payments. If the Court approves a Collective Representative Service Payment in an amount less than the amount requested, the Administrator will retain the remainder in the Net Settlement Amount. The Administrator will pay the Collective Representative Service Payments using an IRS Form 1099-MISC. Plaintiffs assume full responsibility and liability for taxes owed on the Collective Representative Service Payments.

4.2.2 <u>To Collective Counsel</u>: A Collective Counsel Fees Payment of not more than 33% of the Gross Settlement Amount, or One Hundred Twenty Thousand Dollars ($120,000) and a Collective Counsel Litigation Expenses Payment of One Thousand Two Hundred Twenty-Seven Dollars and Seventy-Five Cents ($1,227.75). Defendant will not oppose requests for these payments provided that the amounts requested do not exceed these amounts. If the Court approves a Collective Counsel Fees Payment and/or a Collective Counsel Litigation Expenses Payment in amounts less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount. Defendant and the Released Parties shall have no liability to Collective Counsel arising from any claim to any portion of any Collective Counsel Fee Payment and/or Collective Counsel Litigation Expenses Payment. The Administrator will pay the Collective Counsel Fees Payment and Collective Counsel Expenses Payment using IRS 1099-MISC Forms. Collective Counsel assumes full responsibility and liability for taxes owed on the Collective Counsel Fees Payment and the Collective Counsel Litigation Expenses Payment. Collective Counsel agrees to indemnify and hold harmless Defendant and the Released Parties from any claim, dispute, or controversy regarding any division or sharing of the Collective Counsel Fee Payment or Collective Counsel Litigation Expenses Payment.

4.2.3 <u>To the Administrator</u>: An Administration Costs Payment not to exceed Eleven Thousand Dollars ($11,000.00) except for a showing of good cause and as approved by the Court. To the extent the actual Administration Costs are less than this amount, or if the Court approves an Administration Costs Payment of less than this amount, the Administrator will retain the remainder in the Net Settlement Amount.

4.2.4 <u>To Each Participating Collective Member</u>: Each Participating Collective Member who timely submits a Claim Form shall be paid an Individual Settlement Award calculated based on the Participating Collective Member's Individual Maximum Potential Recovery for all Released Claims relative to the Total Maximum Potential Recovery for all

Released Claims for all Collective Members during the Claim Period. The Individual Maximum Potential Recovery for each Collective Member is calculated by determining the amount of alleged overtime wages and any additional potential damages owed (including liquidated damages, interest, statutory penalties and other potential damages, which additional potential damages are reduced by any severance payment amount previously paid by Defendant to the Collective Member pursuant to a Termination of Consulting Agreement and Release, or similar separation agreement between the Collective Member and Defendant based on the claims and facts alleged in the Complaint for the Claim Period by multiplying each Collective Member's actual overtime hours worked for Defendant each workweek during the Claim Period by each Collective Member's half-time rate of pay (i.e., 0.5 times each Collective Member's regular hourly rate of pay) and adding any additional related damages, including, but not limited to, liquidated damages. The overtime hours worked and applicable rate(s) of pay for each Collective Member have been calculated using Defendant's time and pay records maintained in the ordinary course of business. For example, if the time and pay records for the Claim Period establishes a Collective Member is owed overtime pay that entitles them to an Individual Maximum Potential Recovery of 2% of the Total Maximum Potential Recovery owed to all Collective Members during the Claim Period, that Collective Member will be eligible to receive a minimum of 2% of the Net Settlement Amount if the Collective Member properly consents to join the Settlement by timely submitting a Claim Form.

        4.2.4.1  <u>Tax Allocation of Individual Settlement Payments</u>. Thirty Three Percent (33%) of each Participating Collective Member's Individual Settlement Award will be allocated to settlement of claims for alleged unpaid wages (the "Wage Portion"). The Wage Portion of each Individual Settlement Award shall be treated as supplemental wages and subject to tax withholding at the applicable supplemental tax rate and will be reported on an IRS W-2 Form. All required taxes from the Wage Portion of the Individual Settlement Awards due and owed by Participating Collective Members shall be paid from the Gross Settlement Amount. The remaining Sixty Seven Percent (67%) of each Participating Collective Member's Individual Settlement Award will be allocated to settlement of claims for liquidated damages, pre-judgment interest and taxes (the "Non-Wage Portion"). The Non-Wage Portion of each Individual Settlement Award is not subject to tax withholdings and will be reported on an IRS Form 1099-MISC. Participating Collective Members assume full responsibility and liability for any taxes owed on their Individual Settlement Award.

        4.2.4.2  <u>Effect of Non-Participating Collective Members on Calculation of Individual Settlement Awards</u>. Non-Participating Collective Members will not receive any Individual Settlement Awards and will not be bound by the release of claims in Section 6.1 of this Agreement. The Individual Settlement Awards amounts for Non-Participating Collective Members shall not revert to Defendant. The Administrator will retain the amounts of Individual Settlement Awards of Non-Participating Collective Members in the Net Settlement Amount for distribution to Participating Collective Members on a pro rata basis in the manner set forth in Paragraph 4.2.4.

5.    **SETTLEMENT FUNDING AND PAYMENTS**.

5.1    <u>Collective Data</u>. No later than fourteen (14) calendar days after the Court grants Approval of the Settlement, Defendant will deliver the Collective Data to the Administrator, in the form of a Microsoft Excel spreadsheet, and any other information required by the Administrator to effectuate the terms of the Settlement. To protect Collective Members' privacy rights, the Administrator must maintain the Collective Data in confidence, use the Collective Data only for purposes of this Settlement and for no other purpose, and restrict access to the Collective Data to Administrator employees who need access to the Collective Data to effect and perform under this Agreement. No later than fourteen (14) calendar days after the Court grants Approval of the Settlement, Counsel for Plaintiffs will provide the Settlement Administrator a Microsoft Excel spreadsheet containing the Collective Member's Individual Potential Maximum Recovery.

5.2    <u>Withholdings on Wage Portion.</u>  No later than ten (10) days after the Response Deadline, the Administrator will provide Defendant with the calculation of Defendant's share of required taxes on the Wage Portion of payments made to Participating Collective Members.

5.3    <u>Funding of Gross Settlement Amount</u>. Defendant shall fund the Gross Settlement Amount by transmitting the funds to the Administrator no later than seven (7) days after the Administrator provides Defendant the calculation of Defendant's share of the required withholding on the Wage Portion of payments to Participating Collective Members. The Administrator shall hold the Gross Settlement Amount in escrow in a Qualified Settlement Fund established in accordance with US Treasury Regulation section 468B-1 to be administered on behalf of Collective Members according to this Agreement.

5.4    <u>Payments from the Gross Settlement Amount</u>. Within seven (7) days after the Funding of the Gross Settlement Amount, the Administrator will mail checks or directly deposit all Individual Settlement Awards, the Administration Costs Payment, the Collective Counsel Fees Payment, the Collective Counsel Litigation Expenses Payment, and the Collective Representative Service Payments.

5.4.1    The Administrator will issue checks for the Individual Settlement Awards and send them to the Participating Collective Members via First Class U.S. Mail, postage prepaid. The face of each check shall prominently state the date (120 days after the date of mailing) when the check will be voided. The Administrator will cancel all checks not cashed by the void date. The Administrator will send checks for Individual Settlement Awards to all Participating Collective Members who timely submit a Claim Form by the Response Deadline. Before mailing any checks, the Administrator must update the Participating Collective Members' mailing addresses using the information provided on the Claim Form or the National Change of Address Database.

5.4.2    The Administrator must conduct a Collective Member Address Search for all Participating Collective Members whose Individual Settlement Award checks are returned undelivered without a USPS forwarding address. Within seven (7) days of receiving a returned check the Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Collective Member Address Search. The Administrator need not take further steps to deliver checks to Participating Collective Members whose re-mailed checks

are returned as undelivered. The Administrator shall promptly send a replacement check to any Participating Collective Member whose original check was lost or misplaced, if requested by the Participating Collective Member before the void date.

        5.4.3   For any Participating Collective Member whose Individual Settlement Award check is uncashed and cancelled after the void date, the Administrator shall transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Collective Member.

        5.4.4   The payment of Individual Settlement Awards shall not obligate Defendant to confer benefits of any kind or make any additional payments to Participating Collective Members beyond those specified in this Agreement.

        **6.**    **RELEASES OF CLAIMS**. Upon remittance of the Gross Settlement Amount by Defendant to the Administrator, Plaintiffs and Participating Collective Members will release and discharge Defendant and all Released Parties from the following claims:

        6.1    <u>Wage & Hour Release by Participating Collective Members</u>: All Participating Collective Members, on behalf of themselves and their respective former and present representatives, agents, heirs, administrators, successors, and assigns, release all Released Parties from all claims that were alleged in the Complaint in the Action, and from any and all wage and hour claims arising during the Claim Period that reasonably could have been alleged against the Released Parties based on the factual assertions contained in the Complaint, including the following: (i) claims for failure to pay regular wages, minimum wages, and overtime wages in violation of the Fair Labor Standards Act; (ii) claims for failure to pay regular wages, minimum wages, and overtime wages in violation of any and all state and/or municipal statutes, regulations or ordinances; (iii) claims for recovery of federal, state and/or local employment taxes, deductions and withholdings paid on earnings from their work for Defendant, including without limitation, federal and/or state self-employment taxes, and Federal Insurance Contributions Act taxes (Social Security and Medicare); and (iv) all available relief based on the foregoing claims, including but not limited to, unpaid wages, liquidated damages, statutory penalties, pre- and post-judgment interest, and attorneys' fees and costs (collective "Released Claims"). Except as set forth in this Section, Participating Collective Members do not release any other claims and do not release any claims which cannot be released under applicable law.

        **7.**    **MOTION FOR APPROVAL**. Collective Counsel agrees to prepare and file a motion for approval of the Settlement ("Motion for Settlement Approval"). Collective Counsel and Defense Counsel agree to work expeditiously to prepare and file the Motion for Settlement Approval no later than November 1, 2023, or as otherwise ordered by the Court, and to appear in Court to advocate in favor of the motion. Defendant will not oppose the Motion for Settlement Approval or any aspect thereof. If the Parties disagree on any aspect of the proposed Motion for Settlement Approval, Collective Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to resolve the disagreement. Collective Counsel is responsible for delivering the Court's Approval Order and Judgment to the Administrator. If the Court does not grant Approval or conditions Approval on any material change to this Agreement, Collective Counsel and Defense Counsel will

expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns.

## 8. SETTLEMENT ADMINISTRATION.

8.1 <u>Selection of Administrator</u>. The Parties have jointly selected CPT Group, Inc. ("CPT Group") to serve as the Administrator and have verified that, as a condition of appointment, CPT Group agrees to be bound by this Agreement and to perform, as a fiduciary, all duties specified in this Agreement in exchange for the Administration Costs Payment. The Parties and their Counsel represent that they have no interest or relationship, financial or otherwise, with the Administrator other than a professional relationship arising out of prior experiences administering settlements.

8.2 <u>Employer Identification Number</u>. The Administrator shall have and use its own Employer Identification Number for purposes of calculating payroll tax withholdings and providing reports to state and federal tax authorities.

8.3 <u>Qualified Settlement Fund</u>. The Administrator shall establish a settlement fund that meets the requirements of a Qualified Settlement Fund ("QSF") under US Treasury Regulation section 468B-1.

8.4 <u>Notice to Collective Members</u>.

8.4.1 The Administrator, using best efforts to perform as soon as possible, and in no event later than fourteen (14) days after receiving the Collective Data, shall send to all Collective Members, by first-class United States Postal Service ("USPS") mail and via email, the Notice Packet, including the Collective Notice and Claim Form, substantially in the forms attached hereto as "Exhibit A" and "Exhibit B," respectively. Before sending the Notice Packets, the Administrator shall update Collective Member addresses using the National Change of Address database. The Administrator shall provide the Notice of Settlement and Claim Form to the Parties' counsel for their approval prior to mailing/emailing and certify in writing to the Parties' counsel the date that such mailing/emailing has been made.

8.4.2 Not later than three (3) business days after the Administrator's receipt of any Notice Packet returned by the USPS as undelivered, the Administrator shall re-mail the Notice Packet using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Administrator shall conduct a Collective Member Address Search and re-mail the Notice Packet to the most current address obtained. The Administrator has no obligation to make further attempts to locate or send Notice Packets to Collective Members whose Notice Packet is returned by the USPS a second time.

8.4.3 The Response Deadline will be extended an additional fourteen (14) days for all Collective Members whose Notice Packet is re-mailed. The Administrator will inform the Collective Member of the extended deadline with the re-mailed Notice Packet.

8.4.4 If the Administrator, Defendant, Defense Counsel, or Collective Counsel is contacted by or otherwise discovers any persons who believe they should have been included in the Collective Data and should have received a Notice Packet, the Parties will expeditiously meet

9

and confer in person or by telephone, and in good faith in an effort to agree on whether to include them as Collective Members. If the Parties agree, such persons will be Collective Members entitled to the same rights as other Collective Members, and the Administrator will send, via email or overnight delivery, a Notice Packet requiring them to exercise their options under this Agreement not later than fourteen (14) days after receipt of the Notice Packet, or the deadline dates in the Collective Notice, whichever are later.

8.5    Collective Member Consent to Join Action and Settlement.

8.5.1    Collective Members who wish to consent to join the Action and participate in the Settlement must send to the Administrator, by email, electronic submission or regular U.S. mail, a completed and signed Claim Form. To be valid, the Claim Form must be timely emailed or postmarked by the Response Deadline (plus an additional 14 days for Collective Members whose Notice Packet is re-mailed to them pursuant to 8.4.3).

8.5.2    If the Administrator has reason to question the authenticity of a Claim Form, the Administrator may demand additional proof of the Collective Member's identity. The Administrator's determination of authenticity shall be final and not appealable or otherwise susceptible to challenge.

8.5.3    Every Collective Member who does not submit a timely and valid Claim Form is deemed to be a Non-Participating Collective Member under this Agreement. Non-Participating Collective Members shall not receive an Individual Settlement Award and shall not be subject to or bound by the release of claims in Section 6.1 of this Agreement.

8.6    Administrator Duties. The Administrator has a duty to perform or observe all tasks to be performed or observed by the Administrator contained in this Agreement or otherwise.

8.6.1    Website, Email Address and Toll-Free Number. The Administrator will establish and maintain and use an internet website to post information of interest to Collective Members including copies of the Complaint, Settlement Agreement, Motion for Approval, the Approval Order, and the Collective Notice. The Administrator will also maintain and monitor an email address and a toll-free telephone number to receive Collective Member calls and emails.

8.6.2    Weekly Reports. The Administrator must, on a weekly basis, provide written reports to Collective Counsel and Defense Counsel that, among other things, tally the number of: Notices Packets mailed or re-mailed, Notice Packets returned undelivered, Claim Forms received, objections received, and checks mailed for Individual Settlement Awards ("Weekly Report").

8.6.3    Final Report by Settlement Administrator. Within ten (10) days after the Administrator disburses all funds in the Gross Settlement Amount, the Administrator will provide Collective Counsel and Defense Counsel with a final report detailing its disbursements of all payments made under this Agreement.

9.    **ADDITIONAL PROVISIONS**.

9.1    <u>No Admission of Liability or Collective Certification for Other Purposes</u>. This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or should be construed as an admission by Defendant or any Released Parties that any of the allegations in the Complaint have merit or that Defendant or any Released Parties have any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiffs that Defendant's defenses in the Action have merit. The Parties agree that collective certification is for purposes of this Settlement only. If, for any reason the Court does not grant Approval, Defendant reserves the right to contest certification of any proposed collective for any reasons, and Defendant reserves all available defenses to the claims in the Action, and Plaintiffs reserve the right to move for certification of any proposed collective on any grounds available and to contest Defendant's defenses. The Settlement, this Agreement and Parties' willingness to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and this Agreement).

9.2    <u>Waiver of Certain Appeals</u>. The Parties and each Participating Collective Member agree to waive appeals and to stipulate to certification of the collective for purposes of this Settlement only; except, however, that any Party may appeal any court order that materially alters the Agreement's terms.

9.3    <u>Integrated Agreement</u>. Upon execution by all Parties and their counsel, this Agreement together with its attached exhibits shall constitute the entire agreement between the Parties relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

9.4    <u>Attorney Authorization</u>. Collective Counsel and Defense Counsel separately warrant and represent that they are authorized by Plaintiffs and Defendant, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including any amendments to this Agreement.

9.5    <u>Cooperation</u>. The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying this Agreement, submitting supplemental evidence and supplementing points and authorities as requested by the Court. In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that may become necessary to implement the Settlement, the Parties will seek the assistance of mediator Lynn P. Cohn and/or the Court for resolution.

9.6    <u>No Prior Assignments</u>. The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

9.7    No Tax Advice. Neither Plaintiffs, Collective Counsel, Defendant nor Defense Counsel are providing any advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

9.8    Modification of Agreement. This Agreement, and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their representatives, and approved by the Court.

9.9    Agreement Binding on Successors. This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

9.10    Applicable Law. All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the internal laws of the State of California, without regard to conflict of law principles.

9.11    Cooperation in Drafting. The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

9.12    Cooperation and Execution of Necessary Documents. The Parties agree to cooperate to promote participation in the Settlement, and in seeking court approval of the Settlement. The Parties and their Counsel agree not to take any action to: (a) discourage any Collective Member from joining the Action and the Settlement, or (b) encourage any Collective Members to object to the Settlement.

9.13    Confidentiality. To the extent permitted by law, all agreements made, and orders entered during Action and in this Agreement relating to the confidentiality of information, including the Protective Order, shall survive the execution of this Agreement.

9.14    Headings. The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

9.15    Calendar Days. Unless otherwise noted, all reference to "days" in this Agreement shall be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

9.16    Notice. All notices, demands or other communications between the Parties in connection with this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, or the day sent by email or messenger, addressed as follows:

To Plaintiffs:        Matthew Righetti
                      Righetti Glugoski, P.C.
                      Presidio
                      220 Halleck Street, Suite 220
                      San Francisco, CA 94129
                      matt@rhigettilaw.com

Justin M. Scott
Radford Scott LLP
160 Clairemont Avenue, Suite 610
Decatur, GA 30030
jscott@radfordscott.com

Tracey T. Barbaree
Beth A. Moeller
Moeller Barbaree LLP
1175 Peachtree Street, N.E. Suite 1850
Atlanta, GA 30361
tbarbaree@moellerbarbaree.com
bmoeller@moellerbarbaree.com

To Defendants:     Seth L. Neulight
Nixon Peabody LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
sneulight@nixonpeabody.com

9.17    Execution in Counterparts. This Agreement may be executed in one or more counterparts by facsimile, digital/electronic signatures (e.g., DocuSign), or email which for purposes of this Agreement shall be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

DATED: _____        _____

EDWEENA WASHINGTON

DATED: Oct 27, 2023        _Daphne Molefe_____
Daphne Molefe (Oct 27, 2023 17:55 CDT)

DAPHNE MOLEFE

DATED: _____        CIRCLE MEDICAL TECHNOLOGIES, INC.

By: _____
Name: _____
Title: _____

13

Justin M. Scott
Radford Scott LLP
160 Clairemont Avenue, Suite 610
Decatur, GA 30030
jscott@radfordscott.com

Tracey T. Barbaree
Beth A. Moeller
Moeller Barbaree LLP
1175 Peachtree Street, N.E. Suite 1850
Atlanta, GA 30361
tbarbaree@moellerbarbaree.com
bmoeller@moellerbarbaree.com

To Defendants:    Seth L. Neulight
Nixon Peabody LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
sneulight@nixonpeabody.com

9.17    Execution in Counterparts. This Agreement may be executed in one or more counterparts by facsimile, digital/electronic signatures (e.g., DocuSign), or email which for purposes of this Agreement shall be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

DATED: Oct 30, 2023          *Edweena Washington*
                             Edweena Washington (Oct 30, 2023 15:03 EDT)
                             EDWEENA WASHINGTON

DATED: _____        _____
                             DAPHNE MOLEFE

DATED: _____        CIRCLE MEDICAL TECHNOLOGIES, INC.

                             By: _____
                             Name: _____
                             Title: _____

13

Justin M. Scott
Radford Scott LLP
160 Clairemont Avenue, Suite 610
Decatur, GA 30030
jscott@radfordscott.com

Tracey T. Barbaree
Beth A. Moeller
Moeller Barbaree LLP
1175 Peachtree Street, N.E. Suite 1850
Atlanta, GA 30361
tbarbaree@moellerbarbaree.com
bmoeller@moellerbarbaree.com

To Defendants:     Seth L. Neulight
Nixon Peabody LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
sneulight@nixonpeabody.com

9.17    Execution in Counterparts. This Agreement may be executed in one or more counterparts by facsimile, digital/electronic signatures (e.g., DocuSign), or email which for purposes of this Agreement shall be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

DATED: _____        _____
                              EDWEENA WASHINGTON

DATED: _____        _____
                              DAPHNE MOLEFE

DATED: _10/31/2023_           CIRCLE MEDICAL TECHNOLOGIES, INC.

                              By: _George Favvas_____
                                   3B32F978E4594A9...
                              Name: _George Favvas_____
                              Title: _Chief Executive Officer_____

13

**Approved as to Form**:

RIGHETTI GLUGOSKI, P.C.

DATED: October 27, 2023

_____
Matthew Righetti
*Attorneys for* Plaintiffs

RADFORD SCOTT LLP

DATED: _____

_____
Justin M. Scott
*Attorneys for* Plaintiffs

MOELLER BARBAREE, LLP

DATED: _____

_____
Tracey T. Barbaree
Beth A. Moeller
*Attorneys for* Plaintiffs

NIXON PEABODY LLP

DATED: _____

_____
Seth L. Neulight, Esq.
*Attorneys for* Defendant
Circle Medical Technologies, Inc.

14

**Approved as to Form:**

RIGHETTI GLUGOSKI, P.C.

DATED: _____

_____
Matthew Righetti
*Attorneys for* Plaintiffs

RADFORD SCOTT LLP

DATED: _____

_____
Justin M. Scott
*Attorneys for* Plaintiffs

MOELLER BARBAREE, LLP

DATED: _10-27-23_

_____
Tracey T. Barbaree
Beth A. Moeller
*Attorneys for* Plaintiffs

NIXON PEABODY LLP

DATED: _____

_____
Seth L. Neulight, Esq.
*Attorneys for* Defendant
Circle Medical Technologies, Inc.

14

**Approved as to Form**:

RIGHETTI GLUGOSKI, P.C.

DATED: _____

_____
Matthew Righetti
*Attorneys for* Plaintiffs

RADFORD SCOTT LLP

DATED: 10/31/2023
_____

Justin Scott
D7846B77FD354EB...
_____
Justin M. Scott
*Attorneys for* Plaintiffs

MOELLER BARBAREE, LLP

DATED: _____

_____
Tracey T. Barbaree
Beth A. Moeller
*Attorneys for* Plaintiffs

NIXON PEABODY LLP

DATED: _____

_____
Seth L. Neulight, Esq.
*Attorneys for* Defendant
Circle Medical Technologies, Inc.

**Approved as to Form**:

RIGHETTI GLUGOSKI, P.C.

DATED: _____          _____
                                Matthew Righetti
                                *Attorneys for* Plaintiffs

                                RADFORD SCOTT LLP

DATED: _____          _____
                                Justin M. Scott
                                *Attorneys for* Plaintiffs

                                MOELLER BARBAREE, LLP

DATED: _____          _____
                                Tracey T. Barbaree
                                Beth A. Moeller
                                *Attorneys for* Plaintiffs

                                NIXON PEABODY LLP

DATED: _October 27, 2023_       _____
                                Seth L. Neulight, Esq.
                                *Attorneys for* Defendant
                                Circle Medical Technologies, Inc.

14

**EXHIBIT A**

**NOTICE OF SETTLEMENT OF WAGE CLAIMS AGAINST CIRCLE MEDICAL TECHNOLOGIES, INC.**

To all persons who worked for Circle Medical Technologies, Inc. in the United States as an independent contractor in a covered position at any time between March 27, 2020, through **[DATE]**. If you wish to join this lawsuit, you must complete and return the attached Consent to Join Form by **[DATE], 2023**.

***\*\*\*If you signed a Termination of Consulting Agreement and Release or other separation agreement with Circle Medical you still may join this lawsuit and seek to recover the unpaid overtime as outlined below\*\*\****

**PLEASE READ THIS NOTICE CAREFULLY. IT MAY AFFECT YOUR LEGAL RIGHT TO COLLECT A TOTAL AMOUNT OF AT LEAST INSERT AMOUNT (LESS APPLICABLE PAYROLL DEDUCTIONS) IN CONNECTION WITH THE SETTLEMENT OF A COLLECTIVE ACTION LAWSUIT.  TO RECEIVE YOUR PAYMENT YOU MUST RETURN THE CLAIM FORM BY [DATE].**

| | |
|---|---|
| **1.** | **WHAT IS THIS NOTICE ABOUT?** |

A settlement agreement (the "Settlement") has been reached between Plaintiffs Edweena Washington and Daphne Molefe ("Plaintiffs") and Circle Medical Technologies, Inc. ("Circle Medical") in a lawsuit that was filed in the U.S. District Court for the Northern District of California ("the Court"). The case is *Edweena Washington and Daphne Molefe v. Circle Medical Technologies, Inc.*, Case No. 3:230cv-01420-LB (the "Lawsuit").  Plaintiffs are pursuing the Lawsuit on behalf of themselves and other individuals who worked for Circle Medical in the United States as independent contractors in positions in administrative customer support, prescription, billing, and patient advocate/care/coordinator roles, using job titles including but not limited to, Patient Care Coordinator I, Patient Care Coordinator II, Patient Care Advocate, Patient Care Coordinator, RX Patient Care Advocate/Coordinator, Pharmacy Support Specialist, and Billing Support Advocate/Coordinator (collectively "Covered Position(s)"), at any time from March 27, 2020 through **[DATE]**.

The Court overseeing the Lawsuit has approved the Settlement, which pays money to you and other Collective Members who timely join this Settlement ("Participating Collective Members"). The Court appointed Moeller Barbaree LLP, Radford Scott LLP and Righetti Glugoski, P.C. to serve as Collective Counsel. In making this appointment and approving the Settlement, the Court gave these Collective Counsel firms the authority to represent and bind Plaintiffs and the Participating Collective Members regarding the Settlement.

You are receiving this Notice because you were identified from Circle Medical's records as someone who worked for Circle Medical as an independent contractor in a Covered Position at some point during the time period of March 27, 2020 through **[DATE]**, making you eligible to recover money from the Settlement. ***You are eligible even if you previously signed a Termination of Consulting Agreement and Release or other separation agreement with Circle Medical.***  In order to recover at least_____, you must submit the included claim form to join the Settlement. If you do not join the Settlement, you will not receive any money.

This Notice is designed to provide you with a brief description of the Lawsuit, inform you of the terms of the Settlement, and discuss your rights in connection with the Settlement. The Court has not determined that Circle Medical is liable or did anything wrong. Instead, Plaintiffs and Circle Medical reached this Settlement to resolve the case.

| 2. | **WHAT IS THIS NOTICE ABOUT?** |
|---|---|

The Lawsuit was filed by the Plaintiffs who worked for Circle Medical as independent contractors rather than employees. They allege that Circle Medical misclassified them as independent contractors and that Circle Medical should have treated them as employees and paid them overtime at one-and-one-half their regular rate of pay for time worked over 40 hours per workweek. The Lawsuit seeks overtime wages and liquidated damages for current and former independent contractors who worked for Circle Medical in Covered Positions at any time from March 27, 2020, to **[DATE]**.

Circle Medical denies the allegations alleged in the Lawsuit and asserts that it properly classified persons as independent contractors and that it properly paid them all compensation due for services rendered to Circle Medical.

After settlement negotiations with the assistance of a mediator, Plaintiffs and Circle Medical agreed to settle the Lawsuit. The Parties and their attorneys have concluded that the Settlement is advantageous, considering the risks and uncertainty to each side of continued litigation.

| 3. | **HOW MUCH WILL I RECEIVE AND HOW DO I GET THE MONEY OFFERED?** |
|---|---|

The settlement payment for which you are eligible is based on your time and pay records with Circle Medical, the number of hours of overtime you worked for Circle Medical during the relevant period, the amount you were paid by Circle Medical, and any applicable payroll deductions. If you were classified as an independent contractor for Circle Medical and you complete the claim form to join this settlement, you will receive two checks: (1) one check representing wages; and (2) a second check representing penalties, interest and alleged liquidated damages, based on the amount in the settlement fund. **Your total settlement payment is expected to be** *at least* **<<INSERT AMOUNT>>** before payroll deductions.

| 4. | **SUMMARY OF THE SETTLEMENT PAYMENTS** |
|---|---|

1. **Gross Settlement Amount:** Circle Medical will pay $360,000.00 as the total settlement amount to settle the Lawsuit (the "**Gross Settlement Amount**"). The Gross Settlement Amount will cover the entirety of the amount to settle the Lawsuit, including the amounts claimed by the Participating Collective Members, the attorneys' fees and costs approved by the Court, the Service Awards approved by the Court, and the Administration Costs approved by the Court. Circle Medical will separately pay its portion of any payroll withholding arising from the settlement.

2. **Service Awards:** Plaintiffs received approval from the Court for a payment for their time and effort in prosecuting the Lawsuit on behalf of the Collective Members ("Service Awards"). The Service Awards will be paid out of the Gross Settlement Amount to Plaintiffs, and each Named Plaintiff will receive $5,000 as a Service Award.

3. **Collective Counsel's Attorneys' Fees and Costs:** The Court has awarded $120,000.00 in attorneys' fees and $1,227.75 in costs. The Court's award of attorneys' fees and expenses will be paid out of the Gross Settlement Amount.

4. **Administration Costs:** All fees and costs of administering the settlement will be paid from the Gross Settlement Amount. Administrative costs include the cost associated with mailing notice of the Settlement to the Putative Collective Members and processing the settlement payments to the Participating Collective Members. The Court has appointed CPT Group to act as an independent Settlement Administrator for purposes of administering this settlement.

5. **Net Settlement Amount:** The Net Settlement Amount means the Gross Settlement Amount less (1) the attorneys' fees and costs approved by the Court; (2) the Service Awards approved by the Court; and (3) the costs of administration approved by the Court.

6. **Settlement Award:** Each of the Participating Collective Members will be paid a settlement award from the Net Settlement Amount. Each putative Collective Member's share of the Net Settlement Amount will be based on the time and pay records of each Collective Member and the overtime pay and other damages allegedly owed to each Collective Member during the period of March 27, 2020 through ___, 2023 in comparison to the total amount of overtime, unpaid wages, and other damages allegedly owed to all putative Collective Members during the period of March 20, 2020 through ___, 2023. The Settlement Administrator will issue to each Participating Collective Member an IRS W2 and Form 1099.

| 5. | **WHAT ARE MY RIGHTS AS A PUTATIVE COLLECTIVE MEMBER?** |
|---|---|

You have two options:

| To JOIN the settlement:<br><br>**RETURN THE CLAIM FORM** | If you choose to be included in the Settlement, all you need to do is complete the attached Consent to Join Settlement Form and return it to the Settlement Administrator by the due date. After the period to join the Settlement ends, you will receive settlement checks for your share. | **Deadline:**<br>**<<DATE>>** |
|---|---|---|
| To stay out of the settlement:<br><br>**DO NOTHING** | If you do not want a payment or other benefits from this<br><br>settlement and you want to retain the right to sue Circle Medical on your own about any of the wage claims that were settled in this Lawsuit, then **do not** complete the Consent to Joint Settlement Form. By doing nothing, you give up the possibility of getting money from the Settlement of this Lawsuit. | **No deadline** |

If you complete the claim form, you agree to the following:

You will be acknowledging that you are represented by the Collective Counsel and that you will be bound by the terms of the attorney-client agreements signed by Plaintiffs Edweena Washington and Daphne Molefe. You will **not** have to pay the Collective Counsel any money directly. Circle Medical is paying attorneys' fees and costs as part of the settlement as a percentage of the overall recovery.

You will be releasing Releasees from the claims under the Fair Labor Standards Act (FLSA) asserted in the Lawsuit, as well as all FLSA and related state law and other claims that could have been asserted based

on the facts alleged in the Lawsuit, for the period of March 27, 2020 through ____, 2023, including without limitation all wage and hour claims under the FLSA and/or any applicable state wage and hour laws for statutory damages, liquidated damages, penalties, interest, costs and attorneys' fees, and any other relief relating to your classification as an independent contractor.

Releasees means Circle Medical and its parent WELL Health Technologies Corporation, and each of their past and present directors, officers, shareholders, managing agents, successors, and assigns.

| 6. | HOW LONG DO I HAVE TO MAKE A DECISION? |
|----|----------------------------------------|

**The deadline to join the settlement is 60 days after this notice was sent, so you must return the Claim and Consent Form by «DATE».**

| 7. | WHAT HAPPENS AFTER THE DECISION PERIOD ENDS? |
|----|----------------------------------------------|

After the deadline to join the Settlement passes, the Settlement Administrator will perform a final accounting and process the settlement payments for all Participating Collective Members in the Settlement. The Settlement Administrator will then mail checks to all the employees who joined the Settlement.

| 8. | HOW TO GET MORE INFORMATION |
|----|------------------------------|

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, or if you have questions about the Settlement, please see the Settlement Agreement available at <<WEB ADDRESS>>, contact the Settlement Administrator (see below contact information), contact Collective Counsel (see below contact information), or access the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

| | |
|---|---|
| Tracey T. Barbaree<br>Beth A. Moeller<br>MOELLER BARBAREE LLP<br>1175 Peachtree Street N.E., Suite 1850<br>Atlanta, GA 30361<br>Telephone: (404) 748-9122<br>Email: tbarbaree@moellerbarbaree.com<br>Email: bmoeller@moellerbarbaree.com | Justin M. Scott<br>Radford Scott LLP<br>160 Clairemont Avenue, Suite 610<br>Decatur, Georgia 30030<br>Telephone: (678) 780.4880<br>Email: jscott@radfordscott.com |
| Matthew Righetti<br>Righetti • Glugoski, P.C.<br>2001 Union Street, Suite 400<br>San Francisco, CA 94123<br>Telephone: (415) 983-0900<br>Email: matt@righettilaw.com | [INSERT SETTLEMENT ADMINISTRATOR] |

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

**EXHIBIT B**

**CLAIM AND CONSENT FORM TO JOIN SETTLEMENT OF WAGE CLAIM LAWSUIT AGAINST
CIRCLE MEDICAL TECHNOLOGIES, INC.**

Printed Name: _____

1.  I have received and read the Notice regarding the settlement of the lawsuit filed against Circle Medical Technologies, Inc. ("Circle Medical") in *Edweena Washington, et al. v. Circle Medical Technologies, Inc.*, Civil Action No. 3:23-cv-01420-LB, United States District Court for the Northern District of California (the "Lawsuit"). I understand that the Lawsuit was brought under the Fair Labor Standards Act. I understand the case was settled and the Settlement Agreement ("Settlement") was approved by the Court.

2.  I give my consent to join the Settlement. I understand I will receive a proportional share of the Net Settlement Amount totaling at least $<<INSERT AMOUNT>>, less any applicable payroll deductions, for unpaid wages and non-wage damages.

3.  I understand that, in exchange for this payment, all FLSA claims against Circle Medical asserted in the Lawsuit, as well as all state law wage claims, I may have that could have been asserted based on the facts alleged in the Lawsuit will be fully and finally settled.

4.  I agree to be bound by the Court's decisions.

_____        _____
Signature                                               Date

By signing you designate Moeller Barbaree LLP, Radford Scott LLP and Righetti Glugoski, P.C. as your attorneys for your wage claims that are being settled in the Lawsuit. The information below will not be included in any public court filing.

_____
Email Address

_____
Cell Phone Number

_____
Street Address

_____
City/State/Zip

**TO JOIN AND RECEIVE YOUR PAYMENT, RETURN THIS CLAIM FORM NO LATER THAN [DATE] BY MAIL OR EMAIL TO: INSERT**

**OR COMPLETE ONLINE AT: <<HYPERLINK>>**

| QUESTIONS? You can contact the attorneys for the Plaintiffs at: | | |
| --- | --- | --- |
| Tracey T. Barbaree<br>Beth A. Moeller<br>MOELLER BARBAREE LLP | Justin M. Scott<br>Radford Scott LLP<br>160 Clairemont Avenue, Suite 610 | Matthew Righetti<br>Righetti • Glugoski, P.C. |

**EXHIBIT B**

| | | |
|---|---|---|
| 1175 Peachtree St N.E., Ste 1850<br>Atlanta, GA 30361<br>Phone: (404) 748-9122<br>tbarbaree@moellerbarbaree.com<br>bmoeller@moellerbarbaree.com | Decatur, Georgia 30030<br>Phone: (678)780.4880<br>jscott@radfordscott.com | 2001 Union Street, Suite400<br>San Francisco, CA 94123<br>Phone: (415) 983-0900<br>matt@righettilaw.com |